Nixa RAMOS, Plaintiff,

v.

ROCHE PRODUCTS, INC., Defendant.

Julie ROSSY, Abel Rossy, and the conjugal partnership existing between Julie Rossy and Abel Rossy, Plaintiffs,

v.

ROCHE PRODUCTS, INC., Defendant.

Civ. Nos. 87–01442 (JAF), 87–01637 (JAF).

United States District Court, D. Puerto Rico.

Aug. 26, 1988.

Harvey Nachman, Nachman & Fernandez-Sein, San Juan, P.R., for plaintiffs.

Luis F. Antonetti, Goldman & Antonetti, San Juan, P.R., for defendant.

## OPINION AND ORDER

FUSTE, District Judge.

This is a consolidated action in which plaintiffs allege sexual discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e–17, and Law 100 of June 30, 1959, 29 L.P.R.A. § 146. The Title VII claims are bottomed under federal question jurisdiction, and the local claims are based upon diversity jurisdiction. 28 U.S.C. §§ 1343 and 1332. Plaintiff Julie Rossy alleges that because of her gender, Roche Products, Inc. ("Roche") failed to promote her to a managerial position given to a less qualified male. Plaintiff Nixa Ramos alleges that Roche failed to give her promotions in retaliation for being a witness in Rossy's sex discrimination claim before the Equal Employment Opportunity Commission ("EEOC"). Before the court are several motions, including summary judgment and dismissal. In ruling on each, we describe the facts as best we are able from the voluminous, clumsy, repetitive, and largely irrelevant record the parties have provided.

## I. GENERAL FACTUAL BACKGROUND

Roche is a pharmaceutical manufacturing concern with operations located in Manatí, and is an employer within the meaning of Title VII. Roche began operations in Puerto Rico in 1976, and hired both plaintiffs in the same year to work in its Quality Control Department. All of the actors in this story, with the exception of top Roche management, worked in the Quality Control Department. Roche hired Rubén Freyre, who Rossy claims is the lesser qualified male, in September of 1976 as Quality Control Laboratory Supervisor, a position he held until April 16, 1980. Roche hired Rossy as the Quality Control Administrative Manager, and supervised, among others, Ramos, who was hired as a Complaints and Stability Technical Writing Coordinator. At the relevant period, Edward A. MacMullan was the Director of Quality Control. Apparently, the managerial hierarchy at Roche begins with Di-

rectors, who supervise Managers, who in turn oversee Supervisors. From 1976 to December 31, 1978, Ed Brown was the Director of Pharmaceutical Operations, and from January 1, 1979 to January 31, 1983, he was the Vice–President and Director of Operations. From August of 1980 to January 31, 1983, Jim Leonard was the President and General Manager of Roche. In 1983, Brown succeeded Leonard as President.

## II. ROSSY'S DISCRIMINATION CLAIM

In a Title VII case, the plaintiff may prove intentional discrimination through direct proof or through facts which support an inference of discrimination. *Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 107 (1st Cir.1988). Where the plaintiff has offered no direct proof of discrimination, as here, her claim must be proven under the directives of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Keyes v. Secretary of the Navy*, 853 F.2d 1016, 1023 (1st Cir.1988).

The Supreme Court, in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), outlined the applicable burden of proof in a Title VII case alleging discriminatory treatment, relying on the standard set forth in *McDonnell Douglas*. The plaintiff bears the burden of proving by a preponderance of the evidence a prima facie case of sexual discrimination. If the plaintiff meets her initial burden, the burden shifts to the defendant to "articulate some legitimate nondiscriminatory reason" for the adverse personnel decision. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094, (*quoting McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824). While the burden of production shifts to the defendant, the plaintiff maintains the burden of persuasion throughout the case. As to the defendant's quantum of proof, "[i]t is sufficient if the defendant's evi-dence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine*, 450 U.S. at 254–55, 101 S.Ct. at 1094. If the defendant satisfies this burden, the burden shifts back to the plaintiff to show that the reasons shown by the defendant "were but a pretext for discrimination." *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093 (citations omitted) (*citing McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824). *See also Fields v. Clark University*, 817 F.2d 931, 934 (1st Cir. 1987). In order to establish a prima facie case, the plaintiff must demonstrate the following: [1]

1.  that she belongs to a protected class, here sex;

2.  that she applied for an announced, vacant position;

3.  that despite her qualifications, she was rejected, and,

4.  that, after her rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Oliver*, 846 F.2d at 107; *Keyes*, 853 S.Ct. at 1023.

Rossy claims that Roche discriminated against her gender in 1983 by promoting Rubén Freyre instead of her to the position of Director of Quality Control. Roche, in its motion for summary judgment, contends that Freyre was more qualified than plaintiff. Rossy, on the other hand, contends that she possessed the better credentials.[2] We find at the outset that plaintiff has demonstrated a prima facie case: she is a woman who was under consideration for a vacant position filled by a man despite her fine qualifications. The problem in her case lies with her inability to show that defendant's proffered reasons for Freyre's selection was a pretext for discrimination. As the facts will illustrate, both individuals were the sole competitors to fill an upcoming vacancy as the head of

---

**1.** *See generally, Burdine*, 450 U.S. at 254 n. 6, 101 S.Ct. at 1094 n. 6.

**2.** A comparison of the qualifications of the two competitors "is not legally required, and the results are, at best, legally inconclusive. Neither the defendants' managerial judgment nor their recruiting acumen is on trial in this case." *Keyes*, at 1026.

Quality Control, the only division of Roche that both worked in from its start in 1976. In reaching their ultimate ranks within Quality Control, both Rossy and Freyre travelled similar paths through several organizational changes involving both personnel transfers and restructured responsibilities. However, Roche's selection of Freyre was nothing more than a managerial decision after a review of their educational background, work experience with Roche, and performance evaluations.

Both parties submit reams of empirical evidence to prove each professional's superior qualifications. The documentation shows that both possessed similar outstanding job evaluations, though Freyre edged Rossy in work performance and evaluations. They entered Roche with somewhat similar educational backgrounds, though Roche considered Freyre's chemistry degree more valuable than Rossy's degree in Arts and Natural Sciences. The parties agree that both candidates remained equal only in prior work experience.

To begin, Rossy earned her B.A. in Arts in the Natural Sciences Faculty in 1968 from the University of Puerto Rico, and in 1974 received her M.S. in Educational Administration and Supervision from the University of Bridgeport, Connecticut. Later, while working for Roche, in 1982 Rossy obtained a law degree from the Interamerican University. Roche funded her legal education and there is some evidence it intended for her to work at Roche in the area of regulatory affairs as it relates to pharmaceuticals. Freyre received a B.S. in Chemistry from the Universidad Central de Bayamón in 1975, and earned a prize for the best graduate in Chemistry from the Puerto Rico College of Chemists in the same year. While working at Roche, he completed some graduate courses in Industrial Pharmacy at the University of Puerto Rico. Roche initially believed that Rossy earned her degree in Biology, and later learned, at the time that she was under consideration for the promotion to Director of Quality Control, that her degree was actually in arts and sciences. Both were hired to different positions in the Quality Control Department, plaintiff as Quality Control Administrative Manager, and Freyre as Quality Control Laboratory Supervisor.

MacMullan, the Director of Quality Control, encouraged his employees in Quality Control, as far back as 1978, to obtain a Certified Quality Engineer certificate. He made clear, however, that obtaining the certificate was not a predicate to maintaining a position within Roche. To earn this specialized certificate, an applicant must pass an exam that covers eight major areas of quality control that are relevant to the Department of Quality Control at Roche. Rossy did not take the exam, but Freyre was one of three associates out of eleven who took and passed the exam in 1979. The record shows that the powers that be in Roche looked favorably upon those who earned the certificate.

Turning to their work history with Roche, in 1981 Roche reorganized the Quality Control Department and named Freyre to the newly created position of Manager of Quality Assurance. This entailed a transfer of all previous responsibility in quality assurance from Rossy to Freyre. In turn, Rossy was named Manager of Administrative Services. In November 1981, the Directors of Roche ranked its nineteen Managers "in terms of contribution to the Company and job knowledge." Ranking of Managers, Defendant's Exhibit 62. The ranking report states that "Mrs. Rossy and Mr. Freyre have been specifically identified while the other managers are coded for obvious reasons ... However, Mr. Freyre was rated significantly higher than Mrs. Rossy in both categories [of individual contribution and job knowledge]." *Id.* In Individual Contribution, the Directors ranked Freyre third and Rossy ninth, and in Job Knowledge the Directors ranked Freyre fourth and Rossy eighth. *Id.*

With regard to work performance, throughout their tenure in their varying positions within Quality Control, both earned several outstanding annual job evaluations from their respective managers or directors. In 1978 and 1979, Freyre's manager rated him "exceptional," the highest

evaluation, in his position as Environmental Laboratory Supervisor. MacMullan was Freyre's supervisor from 1980 to 1983, and rated him "excellent" in 1980, "exceptional" in 1981, and "excellent" in 1982. From 1977 to 1982 Rossy was rated "excellent" in her annual performance evaluation as Manager of Quality Control, and never obtained a rating of "exceptional."

In 1982 Leonard, the President of Roche, anticipated that MacMullan would soon be leaving Roche and that he would need a new Director of Quality Control. Leonard concluded that Rossy and Freyre were the only viable candidates to replace MacMullan and informed them that they were competing with each other for the position. In July, as part of his evaluation of both, he requested from them a written five-year plan of action for the future of the Quality Control Department. In their reports, both suggested the elimination of the position of Quality Assurance Group Supervisor, held by plaintiff Ramos. Top Roche management considered both candidates' proposals were "well written thoughtful documents," but thought that "Mr. Freyre's projections were more concrete and specific." Plaintiff's Exhibit 4. In December of 1982, Leonard recommended to Brown, who succeeded Leonard as President, that Freyre be appointed Director of Quality Control, taking into consideration their educational background, work experience, job evaluations, special achievements at Roche, management and technical abilities, and Directors' opinions. In late December 1982 or early 1983, Brown accepted Leonard's recommendation and replaced MacMullan with Freyre, concluding that in consideration of the above factors, Freyre was better qualified. Brown did not think that Rossy's law degree made her more qualified than Freyre, and concluded that Freyre's chemistry degree was more valuable than Rossy's degree in arts and sciences. Freyre assumed the position on February 1, 1983 and holds it to this date. Rossy is still employed with Roche as the Manager of Quality Control Administration.

The extensive facts provided by both the plaintiff and defendant show that sex was not the basis under which Roche decided to promote Freyre over Rossy. Roche's choice was merely a matter of management preference, conducted after a thorough review of both candidates' background that included a written test of their leadership abilities and that was made after a considered evaluation by its President and outgoing head of the Quality Control Department.

In sum, Rossy is unable to show that Roche's articulated reason was a pretext for some hidden gender-based discrimination. Furthermore, there is no evidence in these files that tend to show that sex played any role in the decision to promote Freyre over Rossy. Title VII was "not intended to 'diminish traditional management prerogatives.'" *Texas Department of Community Affairs v. Burdine*, 450 U.S. at 259, 101 S.Ct. at 1096 (*quoting Steelworkers v. Weber*, 443 U.S. 193, 207, 99 S.Ct. 2721, 2727, 61 L.Ed.2d 480 (1979)). "It is chancy business, indeed, for a court —on so interstitial a matter—to set itself up as a super personnel evaluator and attempt to reweigh the credentials of the candidates." *Keyes*, at 1025. It is not our duty to, nor should we second guess management's personnel decision where there is no hint of improper motive. Accordingly, summary judgment must be entered in favor of Roche dismissing Rossy's claim for sexual discrimination.

### III. RAMOS' DISCRIMINATION AND RETALIATION CLAIM: BACKGROUND

Ramos asserts that Roche discriminated against her on the basis of sex and in retaliation for being a witness in Rossy's sex discrimination claim. She claims the discrimination and retaliation resulted in the following:

1. Roche's failure to promote her to either Quality Control Lab Manager or Manager of Quality Assurance;

2. her supervisor giving her a rating of only "very good" on her 1983 annual performance evaluation, and

3. Roche's elimination of her job as Group Supervisor and transfer to another position.

For the reasons that follow, we dismiss her sex discrimination claim, but leave intact her retaliation claim.

Roche hired Ramos as Quality Assurance Supervisor on October 1, 1976, a position she held until June 18, 1981. Rossy was her manager until about March 5, 1981. Ramos believed she should have been promoted to the position of Manager of Quality Assurance on March 5, 1981 instead of Freyre. However, Freyre promoted her to Quality Assurance Group Supervisor on June 18, 1981, and she held that position until May 14, 1984. When Rossy filed her EEOC charge in 1983 alleging sexual discrimination, she announced Ramos as a witness. On February 23, 1983, Rossy was deposed in relation to her EEOC charge and announced Ramos as a witness. On September 30, 1983, Ramos executed an affidavit regarding the Rossy case in which she attests, among other things, that the day after the Rossy deposition was taken, Héctor Alvarez, who held a managerial position, called Ramos into his office to discuss the previous day's deposition. Ramos states that "Mr. Héctor Alvarez called me into his office and asked me if I was aware that Mrs. Rossy announced me as a witness, and if I was aware that I would have to go into a court to declare on her behalf. That he also advised me that nothing would happen to me if I decided to do so."

In early 1983, Freyre selected Héctor Berberena, then Manager of Quality Control Laboratory, to be his replacement as Manager of Quality Assurance. He took that position on March 7, 1983, and became Ramos' manager from thereafter. On July 31, 1984, Berberena transferred Ramos from Group Supervisor, because that position was soon to be eliminated, to GMP Training Supervisor, a position she still holds. In their reports to Leonard regarding the five-year future of Quality Control, both Rossy and Freyre recommended the elimination of the Group Supervisor position. Sometime in early 1983, Freyre selected Mattie Muñoz, a female, to replace Berberena as Manager of Quality Control

Laboratories. Berberena rated Ramos "very good" in her annual performance as Group Supervisor on July 14, 1983.

A. Ramos' Retaliation Claim

Title VII, 42 U.S.C. § 2000e–3(a), prohibits employer retaliation against its employees because of participation in a Title VII investigation. To prove a prima facie case of retaliation, the plaintiff must show that (a) she engaged in activity protected under Title VII; (b) her employer subjected her to adverse employment action, and (c) there exists a causal link between the above two. *Castillo Morales v. Best Finance Corp.*, 652 F.Supp. 412, 415 (D.P.R.1987). In defendant's motion for summary judgment, Roche maintains that plaintiff fails to establish a prima facie case, and, therefore, her case must fail. However, the above facts illustrate the opposite.

■ First, in order to engage in protected activity under Title VII, she must have "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). Quite clearly, under this expansive definition of participation, Ramos participated within the meaning of the statute in Rossy's EEOC discrimination charge in 1983 by executing an affidavit on Rossy's behalf. In that affidavit she attests, among other things, that obtaining a Certified Quality Engineer certificate was not a prerequisite to any promotion, that she believed Rossy was discriminated on account of sex, and that she believed other women at Roche were discriminated on the basis of sex.

■ Having decided that executing this affidavit constituted participation under subsection a, we now turn to whether she suffered adverse personnel decisions. We similarly find that she has satisfied the second prong of her initial burden. She complains of being passed over for two significant promotions and receiving what she considers an unfavorable annual job performance evaluation. The next and last issue is whether there is a causal connection to these personnel decisions and her participation in Rossy's EEOC charge. We

find on this prong there is a genuine issue of a material fact that will require a trial on the merits. Based on the affidavit of Freyre, Roche contends that it made both decisions regarding the promotions before Rossy's February 23, 1983 deposition. However, in Ramos' February 30, 1983 affidavit, she attests that the day after the Rossy deposition, Héctor Alvarez came into her office and discussed the deposition, telling her that if she had to go to court, nothing would happen. Clearly, there is a genuine issue as when Roche management knew of Ramos' participation in Rossy's claim, and whether that had anything to do with the personnel decisions. For this reason, the motion for summary judgment on the retaliation claim must be denied.

### B. Ramos' Discrimination Claim

■ However, Ramos' discrimination claim does not fare as well, and must be dismissed on jurisdictional grounds, for failure to exhaust administrative remedies. Her charge before the EEOC contained only the retaliation claims, and did not contain an allegation, now contained in her complaint, that Roche discriminated against her on account of gender.

On June 21, 1983, Ramos filed her EEOC charge alleging two violations: that Roche retaliated against her when Freyre promoted Mattie Muñoz to Quality Control Laboratory Supervisor instead of her, and Roche retaliated when Berberena changed Ramos' evaluation from "excellent" to "very good" on June 14, 1983. This charge did not include a claim for sexual discrimination. On April 16, 1984, she amended the EEOC charge to include the third retaliation claim, that Freyre appointed Berberena to Manager of Quality Assurance instead of her, but the amendment did not include a claim of sexual discrimination. Apparently, Ramos' deposition testimony cited by defendant reveals that the EEOC helped her draft the amendment and her lawyer approved the amendment. Additional deposition testimony indicates that the failure to file the discrimination claim was no oversight, that she and her lawyer decided to file only the retaliation claim, even though she believed she was the vic-

tim of sex discrimination. In the end, Ramos' EEOC charge never alleged a claim for sex discrimination. The EEOC issued a Notice of Right to Sue on her retaliation charge on August 3, 1987. She then filed suit on October 30, 1987, alleging the retaliatory conduct already described and, in addition, asserting that the adverse personnel decisions were also on account of sex.

■ Filing a charge with the EEOC is a prerequisite to bringing a civil action under Title VII. 42 U.S.C. § 2000e–5(f)(1); *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). The nature of the charge before the EEOC will affect the scope of the court's jurisdiction in the civil suit. *Sánchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir.1970). The facts alleged in the charge will dictate the nature of the investigation the EEOC will conduct. Because Ramos' amended charge, drafted with the help of her attorney and the EEOC, contained facts giving rise to only a retaliation claim, the EEOC would not have investigated a charge of sex discrimination. *Stallcop v. Kaiser Foundation Hospitals*, 820 F.2d 1044, 1051 (9th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 504, 98 L.Ed.2d 502 (1987). In *Stallcop*, the plaintiff filed a claim of national origin discrimination with the EEOC, but did not allege age or sex discrimination. The appeals court affirmed a dismissal of her age and sex discrimination claims because of failure to exhaust administrative remedies. *Id.* at 1051. *Contra Flesch v. Eastern Pa. Psychiatric Inst.*, 434 F.Supp. 963, 970 (E.D.Pa.1977). Because Ramos did not charge before the EEOC a claim of sex discrimination against Roche, and because with the aid of the EEOC and her attorney in drafting an amended charge she consciously chose to omit sex discrimination as a basis of the charge, she will be precluded from asserting an action based on sex discrimination.

### IV. MOTION TO DISMISS BOTH PLAINTIFFS' DIVERSITY ALLEGATIONS

■ In plaintiffs' complaints, they allege that the court has jurisdiction over the

federal claims pursuant to 29 U.S.C. § 626, section 706 of the Civil Rights Act, 42 U.S.C. § 2000e–5(f)(3), and 28 U.S.C. § 1343. They also allege diversity jurisdiction pursuant to 28 U.S.C. § 1332. Submitted is defendant's unopposed motions to dismiss the allegations of diversity jurisdiction on the ground that all parties are residents of the Commonwealth of Puerto Rico. We agree, and the motions are granted.

In the complaints, plaintiffs allege they are residents of Puerto Rico and that defendant is a corporation organized under the laws of the Republic of Panama and having a principal place of business outside of Puerto Rico. Attached to defendant's motion is the affidavit of Héctor L. Alvarez, Assistant Vice–President of Roche, in which he attests that Roche is a wholly-owned manufacturing subsidiary of a Panamanian corporation, is licensed to do business in Puerto Rico, and conducts its business only in Puerto Rico. He attests that the two corporations maintain separate corporate structures, business records, tax returns, and financial statements. He further attests that it administers its own pension plan and employee benefits programs, and that its parent has never operated a plant in Puerto Rico.

Based upon these unrebutted representations, the court is satisfied that the two corporations maintain separate identities, that Roche maintains its own principal place of business, and that its principal and only place of business is Puerto Rico. *See Topp v. Compair, Inc.*, 814 F.2d 830 (1st Cir.1987). For purposes of diversity jurisdiction, a corporation is both a citizen of the state of incorporation and its principal place of business, 28 U.S.C. § 1332(c). Because both the plaintiffs and the defendant are citizens of Puerto Rico, complete diversity does not exist. Therefore, the motion

to dismiss the diversity allegation must be granted.

## V. MOTION TO DISMISS RAMOS' SPOUSE AND THE CONJUGAL PARTNERSHIP

In this action, Julie Rossy, her spouse Abel Rossy, and the conjugal partnership, sue as plaintiffs. Submitted is defendant's unopposed motion to dismiss the spouse and conjugal partnership on the basis that they have no standing to sue under Title VII. We agree, and grant the motion to dismiss them from the case.

Though Congress intended Title VII to provide a broad foundation to remedy employment discrimination, it did not intend to provide a remedy to a spouse of a plaintiff having no employment connection with the employer. 42 U.S.C. section 2000e–2 only prohibits discrimination arising out of an employment relationship. *Hickley v. Arkla Industries, Inc.*, 699 F.2d 748 (5th Cir. 1978). It is uncontested that Abel Rossy and the conjugal partnership did not maintain an employer-employee relationship with Roche.

Our conclusion that Abel Rossy and the conjugal partnership have no standing is supported by analogous federal remedial statutes prohibiting employment discrimination. The substantive provisions in the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.*, ("ADEA") contain language similar to Title VII in prohibiting discrimination based on age.[3] The ADEA only protects employees. *E.E.O.C. v. Zippo Manufacturing Co.*, 713 F.2d 32 (3rd Cir.1983). Similarly, the conjugal partnership and spouse have no standing to sue under 42 U.S.C. § 1983 to redress allegations of deprivation of federal constitutional rights in the employment setting. *Hernández v. Almodóvar*, 631 F.Supp. 960 (D.P.R.1986).

---

**3.** The ADEA provides in pertinent part: "It shall be unlawful for an employer—(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age." 29 U.S.C. § 623(a)(2). The Civil Rights Act provides in pertinent part: "It shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex...." 42 U.S.C. § 2000e–2(a)(1).

Furthermore, Abel Rossy and the conjugal partnership are not persons "claiming to be aggrieved" within the meaning of 42 U.S.C. § 2000e–5(f)(1). Under that section, where a person claiming to be aggrieved filed a charge with the Equal Employment Opportunity Commission ("Commission"), and where the Commission did not enter into a conciliation agreement, that "person claiming to be aggrieved" may bring a civil action against the respondent named in the charge. Julie Rossy filed a charge before the Commission for sex discrimination against the defendant on April 4, 1983. Only she was named in the charge, and Abel Rossy and the conjugal partnership were not included. They are, therefore, not "persons claiming to be aggrieved." They have not complied with the prelitigation administrative requirement of filing a Commission charge as required by section 2000e–5(f)(1), and have no standing to sue.

## VI. MOTION TO DISMISS BOTH PLAINTIFFS' LOCAL CLAIMS

Roche also seeks dismissal of both plaintiffs' local law claims under Law 100 of June 30, 1959, 29 L.P.R.A. § 146, on the ground they are time-barred. This assertion also remains unrebutted. For the following reasons, the motions are granted, and the local claims are dismissed.

The limitations period for a claim arising under section 146 is one year. *Olmo v. Young and Rubicam,* 110 P.R.R. 965 (1981) (adopting a one-year period in a racial discrimination case under section 146). However, a notification to the Department of Labor and Human Resources containing a charge of employment discrimination is an extrajudicial claim that tolls the statute of limitations. *Secretario del Trabajo y Recursos Humanos v. Finetex Hosiery Co., Inc.,* 86 J.T.S. 13 (1986). *See also* 31 L.P.R.A. § 5303. Nixa Ramos filed a Commission charge on July 28, 1983, and Roche was notified on August 31, 1983. Julie Rossy filed her charge on April 4, 1983, and Roche was notified on June 10, 1983. Both filings tolled the limitations period, and a new one-year period began to run on the date of the filings. However, because

both suits were not commenced here until 1987, they are well outside the one-year limitation period. Accordingly, both claims under 29 L.P.R.A. section 146 must be dismissed as time-barred.

## VII.

To sum up, with regard to Julie Rossy, the court grants the motions to dismiss her sex discrimination claims under Title VII and local law. With regard to Nixa Ramos, the court grants the motions to dismiss her sex discrimination claims under Title VII and local law, but denies the motion to dismiss her retaliation claim under Title VII. The court also grants the motion to dismiss her spouse and conjugal partnership. With regard to both Rossy and Ramos, the court grants the motions to dismiss the diversity allegations in their complaints.

Accordingly, judgment will be entered dismissing the complaint of Julie Rossy, and the trial will proceed only on the retaliation claim of Nixa Ramos.

IT IS SO ORDERED.