Julie **ROSSY, et al.,**
**Plaintiffs, Appellants,**

v.

**ROCHE PRODUCTS, INC.,**
**Defendant, Appellee.**

No. 88–2085.

United States Court of Appeals,
First Circuit.

Heard Feb. 27, 1989.

Decided Aug. 4, 1989.

**622**

A. Santiago–Villalonga, with whom Law Offices of Nachman & Fernández–Seín, San Juan, P.R., was on brief, for plaintiffs-appellants.

David A. Copus, with whom Donald B. Ayer, James E. Anklam, Jones, Day, Reavis & Pogue, Washington, D.C., Luis Antonetti, Cayey, P.R., and Goldman & Antonetti, Santurce, P.R., were on brief, for defendant-appellee.

Before BREYER and TORRUELLA, Circuit Judges, and CAFFREY,* Senior District Judge.

TORRUELLA, Circuit Judge.

Julie Rossy ("Rossy"), plaintiff below, appeals from the district court's grant of summary judgment in favor of defendants.

---

* Of the District of Massachusetts, sitting by desig-

Rossy brought this action alleging sex discrimination under Section 704(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17.

Rossy alleges that, although she was well-qualified, she was denied a promotion to the position of Director of Quality Control by her employer, Roche Products, Inc. ("Roche"), solely because of her gender. The district court found that Rossy had put forth a prima facie case of sex discrimination. Nevertheless, the court granted defendants' motion for summary judgment because it found that Rossy presented insufficient evidence to rebut Roche's legitimate explanation for the personnel decision. *Ramos v. Roche Products, Inc.*, 694 F.Supp. 1018 (D.P.R.1988).

We will, of course, review the facts in the light most favorable to the plaintiff. *Menard v. First Security Services Corp.*, 848 F.2d 281, 283 (1st Cir.1988). Rossy began working for Roche in 1976, the year in which Roche began its Puerto Rico pharmaceuticals operations. Roche also hired Rubén Freyre, the man who was promoted to the position for which Rossy aspired, later that same year.

Rossy studied at the University of Puerto Rico and received her Bachelor of Arts degree in natural sciences in 1968. The parties disagree as to the focus of this degree, whether it was on education or science. She also has a Masters degree in Educational Administration and Supervision from the University of Bridgeport. After beginning work at Roche, Rossy went back to school to get a law degree. Roche paid for these courses, which Rossy argues were relevant to her position because of the regulatory affairs aspect of pharmaceutical work.

Freyre received a Bachelor of Science degree in Chemistry from the Universidad Central in 1975. He was honored with an award for the best chemistry student at the university. Freyre also took graduate courses in Industrial Pharmacy at the University of Puerto Rico. Rossy argues that Freyre's college is not as competitive as the University of Puerto Rico. Although

nation.

Roche has stated that it considers a degree in chemistry to be more relevant to the position at issue than Rossy's degrees, Rossy points to many Roche employees at similar or higher positions that do not have straight science degrees.

Rossy was hired originally as Quality Control Administrative Manager, but soon thereafter was given the position of Quality Control Administration and Assurance Manager retroactive to her starting date. She was asked to go to New Jersey for training and finished the twenty-nine week program in only nineteen weeks, after having received excellent evaluations.

Freyre was hired as Quality Control Laboratory Supervisor and was promoted to the position of Manager of Quality Assurance. Upon this promotion, Rossy's prior resonsibilities in quality assurance were transferred to Freyre. Rossy's title then changed to Manager of Administrative Services. Freyre worked a great deal of overtime and although not required for advancement, he studied for and passed the Certified Quality Engineering (CQE) exam and received a CQE certificate. Rossy never took this course. The job description of Director of Quality Control was amended a few weeks before the final hiring decision to state that the CQE certificate was "desirable, but not obligatory" for the position. All employees within the Quality Control Department had been encouraged to obtain the CQE certificate.

Both employees received annual evaluations of their work at Roche. Both consistently received "excellent" evaluations, but only Freyre was rated as "exceptional" on a few occasions. Rossy argues, however, that these differences in ratings should be discounted because Rossy had significantly greater responsibilities at that time. Also, all nineteen managers were ranked in two categories by Roche's directors and Freyre was ranked higher than Rossy in both Individual Contribution and Job Knowledge.

Freyre and Rossy were considered the only two viable candidates for the Director position and as part of the decision-making process were asked to complete reports, stating recommendations for the Quality Assurance department and a workable future plan. Although both reports were well-written, Freyre's report was found by Roche to be more helpful because it contained "concrete and specific" projections. *Ramos,* 694 F.Supp. at 1023.

Also, it appears from the record that the job title and description of the Director's position may have been changed at some point after defendant had identified Rossy and Freyre as the two candidates for the position. The title and responsibilities were changed to remove the regulatory affairs aspect of the position. Moreover, the recommended educational background for the position was changed from a doctoral or equivalent degree to a bachelors degree in science with some relevant graduate work. Rossy argues that these changes, along with the additional statement the CQE certificate was recommended for the position, were made solely to better tailor the position to Freyre's qualifications.

Roche has reported since 1971 that there exists an underutilization of women in the Officials and Managers 1 category, which includes all director positions. Rossy claims that at the time of Freyre's promotion the underutilization occurred with an 18.3% availability of women in the labor pool. Up to this point, there have never been any female directors at Roche.

After Freyre was promoted, Rossy filed a charge of sex discrimination with the Equal Employment Opportunity Commission (EEOC). The EEOC found that there was reasonable cause to believe there was a Title VII violation and issued a right-to-sue letter. Rossy then brought this action in the district court.

*The Summary Judgment Standard*

Rule 56(c) of the Federal Rules of Civil Procedure states that a motion for summary judgment must be granted if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." As we have repeatedly emphasized, however, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for sum-

mary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). This circuit has defined a "genuine issue of material fact" as that which " 'might affect the outcome of the suit under the governing law.' . . . In other words, 'in a run-of-the-mill civil case,' the court must ask 'whether a fairminded jury could return a verdict for the plaintiff on the evidence presented.' " *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 894 (1st Cir.1988) (quoting *Anderson*, 477 U.S. at 248, 252, 106 S.Ct. at 2510, 2512); *accord Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 105 (1st Cir.1988) ("An issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' ") (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510).

In reviewing the trial court's grant of summary judgment, we must review the record in the light most favorable to the nonmoving party and must indulge all inferences in favor of that party. *Oliver*, 846 F.2d at 105. We will reverse a grant of summary judgment if there existed any factual issues that needed to be resolved before the legal issues could be decided. *Lipsett*, 864 F.2d at 895.

Lastly, our review will be most searching in cases, such as this, that turn upon the issue of motive or intent. *Id.; Oliver*, 846 F.2d at 109 (advocating caution and restraint in this context); *Méndez v. Belton*, 739 F.2d 15, 20 (1st Cir.1984). These difficult questions are most suited for jury determinations, as proof is generally based on inferences that must be drawn, rather than on the proverbial "smoking gun." "Even in such cases, however, we will not refuse

to affirm a grant of summary judgment in favor of the defendant if the plaintiff rests merely upon 'unsupported allegations and speculations.' " *Id.* (quoting *Oliver*, 846 F.2d at 110).

### The Title VII Claim

"The inquiry in a Title VII case is whether the defendant intentionally discriminated against the plaintiff." *Oliver*, 846 F.2d at 106. A plaintiff in a Title VII suit, however, does not have to present direct proof of discriminatory motive in order to prevail. Rather, a prima facie case may be established by showing by a preponderance of the evidence that: 1) the plaintiff is within a class protected by Title VII; 2) she applied for and was qualified for the position for which the employer was seeking a replacement; 3) despite her qualifications she was rejected; and 4) after her rejection, the position was filled by a person not within the protected class. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

Once the plaintiff has proved a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employee's rejection. *Id.* This burden is of production, not persuasion, as "the burden of persuasion on the ultimate issue of intent remains with the plaintiff at all times." *Lipsett*, 864 F.2d at 899. After the defendant has stated such an explanation, the plaintiff must demonstrate that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).[1] This final step may be satisfied "either directly by persuading the court that a discriminatory reason more likely motivated the em-

---

1. These standards have not been changed by the Supreme Court's recent decision in *Price Waterhouse v. Hopkins*, —— U.S. ——, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), in which the Court specifically stated that

   Our holding casts no shadow on *Burdine,* in which we decided that, even after a plaintiff has made out a prima facie case of discrimination under Title VII, the burden of persuasion does not shift to the employer to show

   that its stated legitimate reason for the employment decision was the true reason. . . . [S]ince we hold that the plaintiff retains the burden of persuasion on the issue whether gender played a part in the employment decision, the situation before us is not the one of 'shifting burdens' that we addressed in *Burdine.*

   109 S.Ct. at 1788 (citations omitted).

ployer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256, 101 S.Ct. at 1095 (citation omitted).

■ Rossy presents no direct evidence of discrimination and therefore the *McDonnell Douglas* framework is appropriate.[2] The district court found that Rossy had made her prima facie case by showing that although she was qualified, a man was promoted instead of her.[3] Roche, however, articulated a legitimate reason for the personnel decision: although both were good candidates, defendant considered Freyre to be better qualified for the position. Our role is not to second-guess the business decisions of an employer, imposing our subjective judgments of which person would best fulfill the responsibilities of a certain job. *See Keyes v. Secretary of the Navy,* 853 F.2d 1016, 1024–26 (1st Cir.1988); *Menard,* 848 F.2d at 287. "While an employer's judgment or course of action may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was a pretext for illegal discrimination." *Loeb,* 600 F.2d at 1012 n. 6.[4]

■ Rossy's ultimate burden was to show that Roche's reason for choosing Freyre was pretext for underlying discriminatory motives. This showing can be accomplished in many different ways. *Patterson v. McLean Credit Union,* —— U.S. ——, 109 S.Ct. 2363, 2378, 105 L.Ed.2d 132 (1989). In *Patterson,* the Court stated

[petitioner] might seek to demonstrate that respondent's claim to have promoted a better-qualified applicant was pretextual by showing that she was in fact better qualified than the person chosen for the position.... There are certainly other

ways in which petitioner could seek to prove that respondent's reasons were pretextual. Thus, for example, petitioner could ... [present] evidence of respondent's past treatment of petitioner.

*Id.* Rossy argued below that she was in fact the significantly better qualified candidate. Roche disagrees, contending that Freyre was selected because he was more qualified. The record is not so clear that it would enable the court at this stage to determine the issue. Differences in qualifications between Rossy and Freyre can be considered by the jury in determining if the decision to promote Freyre, allegedly based on qualifications, was unreasonable or arbitrary. If so, the jury could use that evidence as part of the basis for inferring sex discrimination.

Also, Rossy points to the changes in job title and description of the director's position as evidence that the position was tailored for Freyre, which additionally could lead to an inference of discrimination. Roche argues that Rossy's "circumstantial" evidence of discrimination is insufficient to satisfy her burden. They claim that they reorganized the Quality Control department, thus giving Freyre some of Rossy's past responsibilities, only because of the start-up of their Valium production project, with which Freyre was much more familiar.

Roche also discounts the changes made in the Director's job title and description as unimportant. The required educational background, they argue, would not have affected either candidate since, although Freyre did not have a doctorate or other relevant degree, he had experience equivalent to the degree. Also, the changed de-

**2.** This framework of shifting burdens is inapplicable when the plaintiff presents direct proof of discrimination. *Fields v. Clark University,* 817 F.2d 931, 935 (1st Cir.1987).

**3.** Although the prima facie case creates a presumption of discrimination, "it is clear that merely making out a prima facie case does not automatically save appellant from a summary judgment motion. 'Indeed, the inference of discrimination created by the prima facie case is dispelled once the employer's reason is stated, until and unless the latter is shown to be pre-

text.'" *Dea v. Look,* 810 F.2d 12, 15–16 (1st Cir.1987) (footnote omitted) (quoting *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1015 (1st Cir. 1979)).

**4.** However, as this court in *Loeb* continued, "[t]he reasonableness of the employer's reasons may of course be probative of whether they are pretexts. The more idiosyncratic or questionable the employer's reason, the easier it will be to expose it as a pretext, if indeed it is one." 600 F.2d at 1012 n. 6.

scription read that the CQE certificate was desirable, but not obligatory, and therefore would not have precluded Rossy from consideration. Lastly, although regulatory affairs was deleted from the job title, Roche argues that this was never a large part of the position and therefore Rossy's legal degree was never very relevant.

This case is admittedly very close. We must disagree, however, with the court below that it is one appropriate for summary judgment. There still exist many factual disputes that are relevant to Rossy's final burden of persuading the court that Freyre's promotion was due to discriminatory intent. All of Roche's explanations may in fact be accurate, but they must be decided after trial, especially in cases such as this where Roche's intent is the central issue. Considering all facts and finding all inferences in Rossy's favor, and based on the evidence currently before us, we conclude that there still exists genuine issues of material fact.

The summary judgment is therefore *vacated* and this case is *remanded* for further action consistent with this opinion.