**Wilma CUMPIANO SANCHEZ, Plaintiff,**

v.

**BANCO SANTANDER—PUERTO RICO, Defendant.**

**Civ. No. 87–0873(PG).**

United States District Court, D. Puerto Rico.

Oct. 31, 1989.

## OPINION AND ORDER

PEREZ–GIMENEZ, Chief Judge.

This is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* In essence, plaintiff Wilma Cumpiano Sánchez ("Cumpiano") alleges that she was a victim of unlawful sex discrimination insofar as she was dismissed from her employment at Banco de Santander–Puerto Rico ("Santander") because she was pregnant. Defendant Santander denies that Cumpiano's dismissal was due to her pregnancy, and claims instead that she was fired because she violated the bank's internal regulations. A non-jury trial was held on August 21, 1989.

### *Findings of Fact*

Pursuant to the provisions of Fed.R. Civ.P. 52(a), we hereby find that the following relevant facts were established at trial:

1. In 1978, plaintiff Cumpiano began working for defendant Santander as a machine operator in the bank's proof and transit department. That same year she was transferred to the accounting department, where she worked as a clerk.

2. From 1978 to 1982 Ms. Cumpiano worked under the supervision of Mr. Humberto Rodríguez Calderón, the Assistant to the Comptroller. In 1980, she apparently became involved in a love affair with him. Despite the fact that Rodríguez was married, the amorous relationship between him and Ms. Cumpiano was conducted in an open and notorious fashion.

3. Indeed, their affair was a matter of public knowledge among their co-workers at the bank, as is evidenced by the testimony of Santander Chief Personnel Officer Arturo Thurín, who testified that in 1982 he became aware of the couple's affair by virtue of the well publicized birth of their first child. Despite such public knowledge of the love affair, the bank did not inform the couple that their behavior violated internal bank regulations, nor did it otherwise reprimand or admonish them at this time.

4. The couple's affair continued openly after Ms. Cumpiano gave birth. In 1983, while at an office softball tournament, Rodríguez' son, who also worked for the bank, publicly argued with his father about Cumpiano's presence there. Several bank officers and employees, including the Assistant Personnel Officer, were present at the tournament and witnessed this episode. Cumpiano received no subsequent admonishment or other comment from the bank or its officers with regards to this event.

5. In 1986, Cumpiano again became pregnant by Rodríguez. In December of that year, after a short vacation, she returned to work dressed in maternity clothes. Again, she made no secret of the identity of the father of her unborn infant.

6. On January 29, 1987, Cumpiano received a call from Chief Personnel Officer Arturo Thurín, asking her to report to his office after work. Upon arrival, Cumpiano was informed that the bank had decided to dismiss her, effective immediately. She would receive a bank check for $5,000.00 in exchange for her letter of resignation and a signed release from liability. When she asked Mr. Thurín for an explanation of the reasons for her dismissal, the personnel officer refused to elaborate, saying that he did not wish to discuss things she already knew.

7. At trial, Santander claimed that plaintiff was dismissed because her conduct violated the bank's internal regulations. Specifically, it claimed that her affair with a married man made her guilty of the crime of adultery under Puerto Rico law, and was therefore violative of Norm # 14 as set forth in Santander's "Manual de Normas Generales de Conducta y Trabajo" (Manual of General Norms of Work and Conduct). Norm # 14 requires bank employees to "maintain at all times conduct characterized by decency and public morality" (our translation). It defines the type of fault which is proscribed to be "conviction of a crime that involves moral depravity, or that involves conduct which in the bank's judgment disqualifies the employee from continuing performance at his/her post" (our translation). Norm # 14 mandates the immediate dismissal of the offending employee.

8. After she was dismissed, Ms. Cumpiano was able to obtain a temporary position with Banco Financiero as a clerk opening new accounts. She worked in this capacity for almost three months, receiving a total of $2,400.00, when she ceased working there. She has subsequently been unable to obtain other employment, despite numerous efforts to do so.

9. During the time that Ms. Cumpiano has been unemployed, Mr. Humberto Rodríguez Calderón has assumed all the expenses of her household and has fully paid a loan she had outstanding. She has also received meager amounts of assistance from the Social Services Department and in the form of unemployment benefits ($190.00).

### Conclusions of Law

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge an individual ... because of such individual's race, color, religion, sex or national origin...." 42 U.S.C. § 2000e–2(a)(1). In 1978, Congress passed the Pregnancy Discrimination Act of 1978, which provides that Title VII's ban on gender based discrimination includes discrimination "because of or on the basis of pregnancy, child birth, or related medical conditions...." 42 U.S.C. § 2000e(k).

"The inquiry in a Title VII case is whether the defendant intentionally discriminated against the plaintiff." *Oliver v. Digital Equipment Corp.*, 846 F.2d 103,

**1018**

106 (1st Cir.1988). A plaintiff in a Title VII suit, however, "does not have to present direct proof of discriminatory motive in order to prevail." *Rossy v. Roche Products, Inc.,* 880 F.2d 621, 624 (1st Cir.1989). Rather, a prima facie case may be established by showing by a preponderance of the evidence that: 1) the plaintiff is within a class protected by Title VII; 2) she was qualified for and adequately performed the job she held; 3) despite her qualifications and performance she was dismissed; and 4) after her dismissal, the position was filled by a person not within the protected class. *See McDonnel Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

■ In the case at bar we find that plaintiff has succeeded in establishing a prima facie case in accordance with these guidelines. First, she has shown that she was pregnant at the time of her dismissal, and hence a member of the class protected by the Pregnancy Discrimination Act of 1978. Second, she has shown that she was eminently qualified for her job, and that she performed it adequately, if not exceptionally. Finally, she has shown that she was nevertheless dismissed, and replaced by a non-pregnant individual.

■ Once the plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employee's dismissal. *McDonnel Douglas, supra* at 802, 93 S.Ct. at 1824. After the defendant has stated such an explanation, the plaintiff must demonstrate that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981); *see also Rossy, supra,* 880 F.2d at 624. This final step may be satisfied "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095.

■ After careful consideration of all the evidence, we hereby find that defendant has failed to articulate a legitimate, nondiscriminatory reason for plaintiff's dismissal.

Norm #14 of the bank's "Manual de Normas Generales de Conducta y Trabajo" does not, in our view, provide an adequate justification for Mrs. Cumpiano's firing. In the first place, Norm #14 appears by its own terms to require *conviction* of a crime in order to apply. Yet Cumpiano was neither formally accused nor much less convicted of the crime of adultery or of any other crime. Second, even assuming *arguendo* that Norm #14 applies to plaintiff's conduct, in light of our analysis of all the evidence we find it more likely than not that defendant's reliance on this regulation does not reflect its true motives for firing Mrs. Cumpiano. We are particularly struck by the great period of time during which the bank apparently acquiesced in plaintiff's "morally depraved" conduct. If the bank's management was aware for *at least five years* that Norm #14 was being violated, and yet did nothing to enforce the rules until plaintiff became pregnant, it seems more likely to us that the proffered explanations are pretextual in nature. Thus, we conclude that the legitimate reasons offered by Santander to justify Cumpiano's dismissal "were not its true reasons, but were a pretext for discrimination." *Burdine, supra* at 253, 101 S.Ct. at 1093.

As a result of defendant's discriminatory action towards plaintiff she has been unemployed continuously since January 1987, except for the three-month period she worked at Banco Financiero. Consequently, she has had to rely entirely upon Mr. Rodríguez Calderón's financial assistance during all this time.

WHEREFORE, in view of the above, we hereby *FIND* in favor of plaintiff Wilma Cumpiano Sánchez, and *ORDER* her immediate reinstatement with back pay. We also find that she is entitled to damages in the amount of $10,000.00, plus costs and

attorneys' fees pursuant to 42 U.S.C. § 2000e–5(k).

IT IS SO ORDERED.