980 F.2d 727
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Richard SMITH; Jerome Williams, Plaintiffs-Appellants,
v.
AMERICAN NATIONAL RED CROSS, Defendant-Appellee.
 No. 91-1884.
 United States Court of Appeals,
Fourth Circuit.
 Argued: September 30, 1992
Decided: December 4, 1992
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Catherine C. Blake, Magistrate Judge. (CA-90-1959-HM)
 ARGUED: Glenn Herbert Carlson, Carlson & Cafferty, P.C., Washington, D.C., for Appellants.
 Anne McCully Murphy, Morgan, Lewis & Bockius, Washington, D.C., for Appellee.
 ON BRIEF: Diane E. Cafferty, Carlson & Cafferty, P.C., Washington, D.C., for Appellants.
 Robert J. Smith, Morgan, Lewis & Bockius, Washington, D.C., for Appellee.
 D.Md.
 Affirmed.
 Before RUSSELL, HALL, and WILLIAMS, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 Richard Smith and Jerome Williams are both long term warehouse employees of the American National Red Cross, with 25 and 22 years of experience respectively. Smith and Williams applied for the newly created position of Shipping/Receiving Coordinator at Red Cross's Jerome H. Holland Laboratory in Rockville, Maryland. Red Cross did not hire either Smith or Williams for the position, and they filed this lawsuit alleging that Red Cross's failure to hire them constituted race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2 (1988). The district court[1] granted summary judgment to Red Cross; Smith and Williams appeal this determination. Agreeing with both the reasoning and conclusion of the district court, we affirm.
 
 I.
 
 2
 Holland Laboratory is a state-of-the-art biomedical research facility associated with the Red Cross blood services program. In the initial year of its operation the facility had no systematic means of handling the approximately 30,000 packages received each year, of managing its $10 million inventory of fixed assets, or of controlling its extensive supplies. In 1988, Wilburn Potter, Manager of the Holland Laboratory, decided to create the position of Shipping/Receiving Coordinator. Potter and his Support Services Manager, Holley Linn, prepared the job description for the new position. Potter intended from the outset to create a sophisticated, computerized system and felt it was essential for the Shipping/Receiving Coordinator to be able to set up such a system. (J.A. at 1496-97.) The task statements listed in the job description for Shipping/Receiving Coordinator included maintenance of the shipping and receiving computer system and maintenance of the computerized fixed asset management system. Under the description of the work requirements for the position, the Red Cross stated that a high school diploma was a threshold requirement, and indicated a preference for "specialized courses in computer applications pertaining to shipping and receiving operations, traffic management, warehousing, and/or inventory control." The position also required a "minimum [of] two years supervisory experience in this or [a] related field," and that the applicant "must be knowledgeable with ... inventory control, and related computer systems." (J.A. at 1424-25 (emphasis in original)).
 
 
 3
 Red Cross posted the Shipping/Receiving Coordinator position in its job vacancy bulletin and advertised the opening in the Washington Post. Potter told Linn she should try to recruit minorities for the position, and Linn called Red Cross's Equal Employment Opportunity (EEO) office for assistance in seeking minorities for the position. The EEO office called Smith and Williams and encouraged them to apply. Smith, Williams, and approximately thirty other applicants sought the position. Potter interviewed five applicants: Smith, Williams, two white males, and one white female.[2] Smith and Williams were the only applicants who were presently employed by Red Cross. Potter decided not to hire any of the initial group of applicants for the Shipping/Receiving Coordinator position, Smith and Williams included, because he thought they lacked the computer expertise which he was seeking.
 
 
 4
 Potter and Linn decided to readvertise the position with more emphasis on the computer requirements. Approximately 20 applicants responded to this second advertisement, including Smith and Williams who reapplied. Linn initially recommended three of the twenty candidates for the position, all of whom were white males. Linn later recommended Smith for the position, primarily because of his length of service with Red Cross.[3] Linn never recommended Williams for the position. Potter did not accept any of Linn's recommendations and hired Roy McHaffa, a white male, as the Shipping/Receiving Coordinator. Potter's reasons for hiring McHaffa were that he had some college education, was working toward his APICS certification,[4] had six years of supervisory experience, and most importantly to Potter, had worked with many computer systems and was familiar with various shipping software packages.
 
 II.
 
 5
 In order to establish a prima facie case of discriminatory failure to hire or promote, Smith and Williams were each required to show that:
 
 
 6
 1.he is a member of a protected group;
 
 
 7
 2.he applied for the position in question;
 
 3.he was qualified for the position; and
 
 8
 4.he was rejected for the position in favor of someone not a member of the protected group under circumstances giving rise to an inference of unlawful discrimination.
 
 
 9
 Alvarado v. Bd. of Trustees of Montgomery Community College, 928 F.2d 118, 121 (4th Cir. 1991). The burden to establish a prima facie case is not an onerous one. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). Once a prima facie case is established, then the burden of persuasion shifts to Red Cross to demonstrate a legitimate, nondiscriminatory reason for rejecting an applicant. Id. at 253, 256. If Red Cross advances a legitimate, nondiscriminatory reason for not hiring either applicant, then Smith and Williams each must rebut this reason by showing that it is a pretext for discrimination. Id. Rebuttal may be"either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Id.
 
 
 10
 The district court held that even assuming that Smith and Williams could establish a prima facie case by demonstrating that they were qualified for the Shipping/Receiving Coordinator position, Red Cross expressed a legitimate, nondiscriminatory reason for its rejection of Smith and Williams: McHaffa was better qualified. The district court then granted summary judgment to Red Cross because it found that Smith and Williams provided no evidence that the reason offered by Red Cross was a pretext for discrimination.[5]
 
 
 11
 We review the grant of summary judgment de novo. United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. If we determine, after reviewing the record in the light most favorable to Smith and Williams as we must, that no rational trier of fact could find for them, we must affirm the grant of summary judgment. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
 
 
 12
 The first difficulty Smith and Williams encounter in establishing their prima facie case is demonstrating that they were qualified for the Shipping/Receiving Coordinator position. It is undisputed that Smith and Williams only possessed a user's knowledge of computers. Smith had been a Shipping/Receiving Supervisor in a non-automated Red Cross warehouse. Smith did have a five-month assignment supervising automated shipping/receiving functions after which he returned to a non-supervisory warehouse position. Though the parties dispute whether or not this was a demotion, Smith's supervisor was not pleased with his performance and recommended that he be returned to his former job. Smith had worked in Red Cross warehouses where he used an IBM System 38, but this system was not compatible with the computer network in use at the Holland laboratory.
 
 
 13
 Williams' only supervisory experience in shipping and receiving was in substituting for and assisting others. Williams twice declined offers for Coordinator positions and returned to a non-supervisory warehouse position. Williams testified that he performed basic data entry and processing on the IBM System 38 but had no experience with other hardware or software, never designed a computerized inventory control system, and knew nothing about software packages.
 
 
 14
 Despite their admitted lack of computer expertise, Smith and Williams argue that the fact Potter selected them to be interviewed and the fact that they possessed the skills outlined in the position description are evidence that they were qualified. In granting summary judgment, the district court assumed Smith and Williams were qualified for purposes of establishing their prima facie case and concluded that neither had presented evidence that race was a motivating factor in Red Cross's decision to reject them and readvertise the position. Because we agree with the district court's ultimate conclusion, we also assume Smith and Williams are sufficiently qualified to establish a prima facie case.
 
 
 15
 Smith and Williams' basic contention is that Red Cross readvertised the Shipping/Receiving Coordinator position with an emphasis on computer expertise in order to avoid hiring them because of their race. Smith and Williams urge us to focus on the requirements of the position as it was first advertised. According to Smith and Williams, if they satisfied these initial criteria then there is an inference of illegal discrimination if they were not hired. The essence of this position is that if they are a member of a protected class, and they can show that they met the minimum requirements reflected in the position description and job advertisement, then there is an inference that any other criteria that Red Cross may have considered in rejecting them was a pretext for race discrimination. It is the employer's prerogative, however, not the applicant's, to establish what criteria are relevant to the hiring decision. See Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1571 (7th Cir. 1989) ("The employee does not get to write his own job description. An employer can set whatever performance standards he wants, provided they are not a mask for discrimination on forbidden grounds such as race or age"); cf. Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980).
 
 
 16
 The evidence is completely consistent with regard to Red Cross's contention that computer expertise was a requirement for the position from its inception. The job description clearly delineates the computer skills required for the position. When none of the initial applicants, including the white applicants, possessed the level of computer expertise Potter wanted for the job, they were rejected. Red Cross then decided to readvertise the position, clarifying and emphasizing the importance of computer expertise as well as other factors, in the hope that another advertisement would draw applicants with more suitable qualifications. When Smith and Williams reapplied for the position, they were rejected again; this time in favor of McHaffa, who undoubtedly was more qualified than both Smith and Williams on the criteria most important to Potter: computer expertise and supervisory experience.
 
 
 17
 All of these factors support the legitimacy of the requirement of computer expertise for the position and the reason given by Red Cross for rejecting Smith and Williams. As the district court pointed out, this court has consistently held that selection of a better qualified applicant is a legitimate, nondiscriminatory reason for rejecting an applicant. Love v. Alamance County Bd. of Educ., 757 F.2d 1504, 1507 (4th Cir. 1985); see Lucas v. Burnley, 879 F.2d 1240, 1243-44 (4th Cir. 1989), cert. denied, 494 U.S. 1026 (1990). The evidence conclusively shows that McHaffa had both more supervisory experience and more in-depth knowledge of shipping and receiving computer software.
 
 
 18
 While Smith and Williams may strongly believe that Red Cross's actions were discriminatorily based on their race, strong beliefs, just like conclusory allegations, speculation, and conjecture, are insufficient to defeat a motion for summary judgment. See Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985) ("Genuineness [of an issue for trial] means that the evidence must create fair doubt; wholly speculative assertions will not suffice"). Although Smith and Williams are correct that for purposes of summary judgment all inferences are drawn in favor of the non-moving party, this standard still requires that the inferences be legitimate, justifiable inferences from the evidence. See Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255 (1986). We find no evidence justifying an inference of race discrimination.
 
 
 19
 In their effort to show that Red Cross's reason for rejecting them was pretextual, Smith and Williams point out various"violations" of Red Cross personnel procedures committed by Potter in the hiring process for the Shipping/Receiving Coordinator position. The alleged violations include failure to amend the job description, complete an interview report, and give first preference in hiring to applicants from within Red Cross. Smith and Williams offer no evidence that giving preference to Red Cross employees in hiring was a mandatory policy. In addition, Potter's failure to amend the job description and to fill out interview reports, even if discriminatory, are intermediate steps in the selection process, as opposed to the ultimate employment decision, and are not proscribed by Title VII. See Page v. Bolger, 645 F.2d 227, 233 (4th Cir.), cert. denied, 454 U.S. 892 (1981) ("[I]t is obvious to us that there are many interlocutory or mediate decisions having no immediate effect upon employment conditions which were not intended to fall within the direct proscriptions ofs 717 and comparable provisions of Title VII"). Moreover, the evidence shows that any failure of Potter to follow Red Cross policies was consistent as to all applicants, regardless of race, and that even if Potter had followed the Red Cross policies allegedly violated, it would have made no difference in whether Smith and Williams were hired. For these reasons, we do not find that the policy violations argued by Smith and Williams support a finding of pretext.
 
 
 20
 Potter's rejection of Linn's memorandum recommending Smith for the position is insufficient to demonstrate an inference of discrimination. Linn's memorandum never represented that Smith was the best qualified candidate for the position or that he had the computer knowledge that Potter was seeking. In addition, Potter rejected all of Linn's recommendations, regardless of the race of the applicant. Smith and Williams argue that Linn's memorandum indicates that there were differences of opinion regarding who should be hired for the position and what factors were most important in the selection. Given the difficulty in choosing between unique candidates in hiring decisions, differences of opinion are to be expected. We do not believe, however, that such differences of opinion are sufficient to create a genuine issue of material fact in the absence of any evidence establishing a link between the decision to reject Smith and Williams and their race.
 
 III.
 
 21
 While we have no doubt that Smith and Williams are both faithful, hardworking employees, it is not the role of the court to second guess an employer or substitute its judgment for the employer's in a hiring decision. See Rossy v. Roche Products, Inc., 880 F.2d 621, 625 (1st Cir. 1989); Danzl v. North St. Paul-Maplewood-Oakdale Indep. Sch. Dist. No. 622, 706 F.2d 813, 817 (8th Cir. 1983). We do not assess the correctness of the hiring decision but assess whether the rejection of one candidate in favor of another was unlawfully motivated by race. See McDaniel v. Temple Independent School Dist., 770 F.2d 1340, 1349 (5th Cir. 1985). We find no evidence upon which a jury could rely to support the conclusion that Red Cross's decision not to hire Smith or Williams for the Shipping/Receiving Coordinator position was motivated by their race. Therefore we affirm the district court's grant of summary judgment to Red Cross.
 
 AFFIRMED
 
 
 [1]
 For simplicity in this opinion, we refer to the court below as the "district court." This matter was in fact heard by a United States Magistrate Judge pursuant to agreement of the parties. 28 U.S.C.s 636(c) and Local Rule 302 (D. Md.)
 
 
 [2]
 Although Potter does not recall interviewing Williams, Red Cross admits that he did
 
 
 [3]
 Specifically, Linn advised Potter that Smith had been with Red Cross longer and had greater computer familiarity and competence than Williams. Smith impressed Linn with his initiative and that he offered to put in extra time for training on the computer system which Red Cross selected. Linn also indicated that Smith had been a loyal Red Cross employee and was familiar with Red Cross procedures
 
 
 [4]
 According to Red Cross, APICS is the professional society for materials handling and inventory control
 
 
 [5]
 The district court also granted summary judgment to Red Cross on the claim of disparate impact discrimination, but Smith and Williams do not appeal that portion of the order