**Elizabeth D. ROSE, Plaintiff,**

v.

**BAYSTATE MEDICAL CENTER, INC. and Jeffrey Ott, Defendants.**

**No. CIV.A. 96–30054–MAP.**

United States District Court, D. Massachusetts.

Nov. 25, 1997.

Gerald J. DiSanti, DiSanti & Szlachetka, West Springfield, MA, for Plaintiff.

Jay M. Presser, Rosemary J. Nevins, Skoler, Abbott & Presser, Springfield, MA, for Defendant Baystate Medical Center, Inc.

Jay M. Presser, Rosemary J. Nevins, Skoler, Abbott & Presser, Springfield, MA, Jonathan B. Hunt, Joseph, St. Clair & Cava, Springfield, MA, for Defendant Jeffrey Ott.

PONSOR, District Judge.

Upon *de novo* this Report and Recommendation is hereby adopted, without opposition. The motion of defendant BMC is ALLOWED and judgment will enter accordingly. The motion of defendant Ott is DENIED without prejudice; count II is hereby remanded to state court.

So ordered.

*REPORT AND RECOMMENDATION REGARDING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (Docket Nos. 29 and 30)*

NEIMAN, United States Magistrate Judge.

## I. INTRODUCTION

Elizabeth D. Rose ("Plaintiff") filed a claim against Bay State Medical Center ("BMC")

and Jeffrey Ott ("Ott") (together "Defendants") with the Equal Employment Opportunity Commission ("EEOC") on September 13, 1995. After receiving a right-to-sue letter from the EEOC, Plaintiff filed a two count complaint against Defendants in state court on March 27, 1996, one count alleging a violation by BMC of 42 U.S.C. § 2000e, Title VII of the Civil Rights Act of 1964 ("Title VII"), and a second count against Ott asserting a claim of negligence. Based on federal question jurisdiction, Defendants, then represented by the same counsel, removed the suit to federal court and filed a joint motion to dismiss. That motion was denied on July 19, 1996.

Proceeding with separate counsel, Defendants brought the pending independent motions for summary judgment. BMC seeks summary judgment on Count I, the Title VII claim, and Ott seeks summary judgment on Count II, the negligence claim. The motions have been referred to this Court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B). For the reasons stated below, the Court recommends that BMC's motion for summary judgment be allowed and that Ott's motion be denied without prejudice and that the case against him be remanded to state court.

## II. *STANDARD OF REVIEW*

■ The role of summary judgment in civil litigation is to pierce the boilerplate of the pleadings and assay the parties' proof in an effort to determine whether trial is actually required. *McIntosh v. Antonino*, 71 F.3d 29, 33 (1st Cir.1995) (citing *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992)). Summary judgment is appropriate where, when viewing the record in a light most favorable to the nonmoving party, the record reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Magee v. United States*, 121 F.3d 1, 3 (1st Cir.1997). "A fact is material when it has the potential to affect the outcome of the suit." *Magee*, 121 F.3d at 3. Where there is an absence of a genuine dispute of material fact, questions of law are appropriate for resolution at summary judg-

ment. *Jimenez v. Peninsular & Oriental Steam Navigation Co.*, 974 F.2d 221, 223 (1st Cir.1992).

## III. *FACTUAL BACKGROUND*

Plaintiff began full time employment at BMC in 1989. (Rose Depo. (Docket No. 34, Exhibit A) at 11.) Plaintiff asserts that, during 1992 and 1993, Ott, her supervisor in the radiology department, sexually harassed her by, among other things, tickling her, cutting a chunk of her hair with scissors, grabbing her around the neck, holding her head to his crotch, holding her head to his chest so tightly that she gouged her forehead on a metal object sticking out of his pocket and touching her breasts. (Id. at 69–70.) Plaintiff asserts that she told Ott repeatedly that his conduct was unwelcome. (Id. at 75–76.) Plaintiff concedes, however, that everyone in the radiology department participated in joking around and making various inappropriate, including sexually connotative, remarks. (Id. at 76–77.) The tenor of the department, Plaintiff admits, was "not very professional." (Id. at 59.) On one occasion, Plaintiff herself, together with a female co-worker, jokingly presented Ott with a mock transfer application, which Plaintiff penned, containing highly suggestive sexual language. (Id. at 101–02; Exhibit K).

At some point after 1993, the sexually suggestive remarks in the department generally ceased as awareness heightened regarding sexual harassment. (Rose Depo. at 77.) Then, sometime in March of 1994, BMC removed Ott as supervisor of the department. (Anderson Depo. (Docket No. 34, Exhibit D) at 47–49.) No evidence is proffered which suggests that Ott's removal correlated with any allegation of sexual harassment.

In October of 1994, Ott walked up behind Plaintiff, grabbed her around the waist and tickled her. (Rose Depo. at 73–74.) Plaintiff said to Ott, with what she alleges was obvious disgust and sarcasm, "Why don't you just grab me," whereupon Ott grabbed her breast. (Id. at 76.) The next month, Ott tickled Plaintiff twice on the same day, to which she objected. (Id. at 75.) Later that day, Ott grabbed Plaintiff making her lunge forward and hit a trash basket. (Id.)

On November 21, 1994, while both Plaintiff and Ott were working with several patients, Ott came up behind Plaintiff, bent down, put his arms around her pelvis, lifted her and turned her toward a patient saying, "there can you see the patient now." (Rose Depo. at 47–48.) Ott squeezed Plaintiff so tightly that he crushed a spinal disc. (Rose Depo. at 103.) The incident required Plaintiff to undergo surgery and caused Plaintiff severe physical and emotional distress. (Rose Depo. at 103; Exhibit J). She remains partially disabled. (Rose Depo. at 103–04.)

Plaintiff immediately reported this last incident to BMC, but made no allegation of sexual harassment. Rather, the gravamen of her complaint was her physical injury. (Rose Depo. at 86.) It was not until she filed the EEOC complaint in November of 1995 that she charged Ott and BMC with sexual harassment. (Id. at 91); Favreau Aff. (Docket No. 33) ¶¶ 11, 20; Anderson Depo. ¶¶ 9–11, 57; Blaney Aff. (Docket No. 32) ¶ 7). After receipt of the complaint, BMC investigated her allegations. (Blaney Aff. ¶¶ 10–15; Blaney Letter of November 16, 1995 (Docket No. 32, Exhibit 2); Blaney Letter of November 30, 1995 (Id. at Exhibit 3). According to BMC, Plaintiff was uncooperative with the investigation. (Blaney Aff. ¶¶ 10–15.) Plaintiff currently collects worker's compensation as a result of her injury and has resumed work at BMC on a part-time basis. (Rose Depo. at 89, 106.)

## IV. *DISCUSSION*

### A. *BMC's motion for summary judgment*

"Title VII of the Civil Rights Act of 1964 provides that it is an 'unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment because of such individual's ... sex'." *Morrison v. Carleton Woolen Mills,* 108 F.3d 429, 436 (1st Cir.1997)(quoting 42 U.S.C. § 2000e–2(a)(1)). It has long been settled that sexual harassment is one virulent form of sex discrimination in the workplace. *Id.* Two different types of sexual harassment claims have been isolated. *Id* . One such claim is quid pro quo harassment in which a supervisor requires sexual favors from his or her employee as a term or condition of employment. *Id.* That is not the allegation at bar. The instant claim is of the other variety, that an employer fosters or allows a hostile work environment. *Id.*

BMC asserts several grounds for summary judgment. First, BMC contends that certain of Plaintiff's claims for sexual harassment are time-barred as a matter of law. Second, BMC asserts that Plaintiff is unable to establish a *prima facie* case of sexual harassment. Third, BMC claims that Plaintiff cannot show that BMC knew or should have known of the hostile work environment or that it took inappropriate remedial action.[1]

1.

Title VII's exhaustion requirement, for deferral jurisdictions such as Massachusetts, requires that an individual file a complaint with the EEOC within three hundred days of the purported discriminatory act. *Lawton v. State Mut. Life Assurance Co. of America,* 101 F.3d 218, 221 (1st Cir.1996); *Galloway v. General Motors Serv. Parts Operations,* 78 F.3d 1164, 1166 (7th Cir.1996); *Desrosiers v. Great Atl. & Pac. Tea Co.,* 885 F.Supp. 308, 311 (D.Mass.1995). Because Plaintiff did not file with the EEOC until September 10, 1995, BMC claims, the only incident definitively falling within the limitations period, BMC maintains, occurred on November 21, 1994. All other claims, BMC asserts, are time-barred.[2]

---

1. BMC also argues that, since the Massachusetts Workers' Compensation Act provides an exclusive remedy for employee injuries, Plaintiff cannot recover further against BMC, her employer. *See* M.G.L. ch. 152 § 24. While the Workers' Compensation Act largely precludes common law claims against an employer, equally clear is that, under the Supremacy Clause, an exclusivity provision of a state's workers' compensation law cannot pre-empt an employee's right under Title VII to be free from sexual harassment. *Karcher v. Emerson Elec. Co.,* 94 F.3d 502 (8th Cir.1996).

2. Plaintiff alleges that certain incidents of harassment occurred earlier in November as well. It is unclear when those incidents occurred and, thus, if they fall outside the limitations period. For purposes of this motion, the Court assumes that these other incidents fall within the limitations period. That assumption does not alter the Court's recommendation.

■ A claimant may recover for incidents arising outside the limitations period if they are part of a continuing violation. As delineated in this circuit, there are two types of such continuing violations. One is a "systemic" violation in which an employer's policy or practice has a discriminatory effect which continues into the allowable statutory time period. *Lawton*, 101 F.3d at 222. No such allegation presents itself in the instant case. The second type, a "serial" violation, which Plaintiff does pursue, involves a number of discriminatory acts which derive from the same discriminatory animus. *Id.* at 221. A serial violation allows a complainant to reach outside the limitations period and claim discrimination for each of the previous acts. *Sabree v. United Bhd. of Carpenters and Joiners Local No. 33*, 921 F.2d 396, 400 (1st Cir.1990).

■ A complainant's recovery for a serial violation, however, turns, at least initially, on a showing that one discriminatory act occurred within the limitations period. *Id.* Granting wide latitude to Plaintiff, the Court assumes that she has provided sufficient evidence to pass this initial threshold. However, a second part of the serial violation inquiry, equally at play here, requires that a claimant show a "substantial relationship" between the timely and untimely acts of discrimination. *Sabree*, 921 F.2d at 402; *Desrosiers*, 885 F.Supp. at 311. This presents Plaintiff with an insurmountable hurdle.

■ Several factors are to be considered as part of the substantial relationship analysis, the most important of which is whether the act falling outside the limitations period has "the degree of permanence which should trigger an employee's awareness and duty to assert his or her rights." *Desrosiers*, 885 F.Supp. at 312 (citing *Sabree*, 921 F.2d at 402 and quoting *Berry v. Board of Supervisors of L.S.U.*, 715 F.2d 971, 980 (5th Cir.1983)). "Permanence is basically an inquiry into what the plaintiff knew or should have known at the time of the discriminatory act. What matters is whether, when and to what extent the plaintiff was on inquiry notice." *Id.* (citing *Sabree*, 921 F.2d at 402). Stated another way, once a claimant is aware that she is the target of harassment, perceiving that conduct as unlawful or merely improper, she has a duty to assert her rights by reporting both that act and the prior acts of harassment. *Id.* Her failure to do so forces the claimant to relinquish her right to seek redress for those acts in the future. *Id.*

■ Taking Plaintiff's description of the facts as true for purposes of BMC's motion, the question, then, is whether she was aware that she was being harassed prior to November 21, 1994. At the very least, did Plaintiff have a contemporaneous duty, when reporting her physical injuries to BMC, to report not only the sexual nature of the November 21, 1994 incident, but the prior incidents as well?

Plaintiff alleges that Ott directed repeated egregious acts of sexual harassment toward her during 1992 and 1993 as well as October and November of 1994. Plaintiff says that she was often an unwilling participant in sexually charged bantering and that she told Ott on various occasions that his actions were unwelcome. Plaintiff also testified that she felt disgust at some of the incidents and expressed those feelings both to Ott and female co-workers.

Given Plaintiff's own description of the incidents and her simultaneous reactions, the permanence factor indicates that Plaintiff knew or should have known that she was being sexually harassed each time she was confronted by Ott's unwelcome advances. At a minimum, Plaintiff should have known that she was a victim of sexual harassment when she initially reported the incident of November 21, 1994. *See Sabree*, 921 F.2d at 401; *Roberts v. Gadsden Mem'l Hosp.*, 850 F.2d 1549, 1550 (11th Cir.1988); *Berry*, 715 F.2d at 980; *McKenzie v. Sawyer*, 684 F.2d 62, 72 (D.C.Cir.1982). Plaintiff then had a concomitant duty to report the prior incidents of harassment as well. She did not. Plaintiff chose instead to focus that report only on her physical injury.

Plaintiff's failure to report the prior incidents, let alone the sexual nature of the November 21, 1994 episode itself, is fatal as a matter of law to her claim of a continuing violation. Since Plaintiff is unable to allege any actionable harassment against BMC

based on earlier occurrences, BMC is entitled to summary judgment with regard to any incident arising outside the limitations period. Plaintiff is left with the only claimed incident to unarguably arise within the limitations period, the alleged harassment of November 21, 1994.

## 2.

■ A *prima facie* showing of a hostile work environment requires Plaintiff to demonstrate that (i) she was subjected to unwelcome, unwanted harassment (which is either sexual in nature, or based upon her sex), and that (ii) the harassment was severe and pervasive enough to create an abusive environment (iii) about which her employer knew or should have known. *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 70–72, 106 S.Ct. 2399, 2407–08, 91 L.Ed.2d 49 (1986); *Morrison,* 108 F.3d at 436–37. As discussed below, although Plaintiff barely survives the first two prongs for purposes of BMC's motion, she does not survive the third.

■ A claimant must first show that the alleged harasser's actions were sexual, sex based or had some sexual overtones. *See Morrison,* 108 F.3d at 441. To constitute actionable harassment, the claimed conduct must be both objectively and subjectively offensive, that is, a court must consider whether, based on the totality of the circumstances, the alleged conduct was sufficiently severe and pervasive to "interfere with a hypothetical reasonable person's work performance." *Messina v. Araserve, Inc.,* 906 F.Supp. 34, 36 (D.Mass.1995). Claims made by a sometimes willing participant in sexual bantering are to be examined in that light. *Id.*[3]

In assessing Plaintiff's allegations of sex based behavior, the Court finds her case distinct from *Morrison* upon which she primarily relies. There, the uncontroverted evidence showed that the claimant's direct supervisor subjected her to constant unwelcome, unwanted verbal and quid pro quo sexual harassment, much of which was corroborated. *Morrison,* 108 F.3d at 433. In the instant case, in contrast, Plaintiff offers scant corroborative evidence. First, despite Lakes–Afflito's testimony that she twice observed Ott tickling Plaintiff, Plaintiff herself never reported any sex based conduct to BMC either prior to or concurrent with the November 21, 1994 incident. The first description of sexual harassment was set out in Plaintiff's complaint with the EEOC, filed 294 days later. Moreover, Plaintiff's own deposition testimony reveals that, at least intermittently, she was a willing participant in sexually charged interchanges with Ott, most notably when she wrote and presented to him a sexually suggestive mock transfer application. An objective examination of the November 21, 1994 incident, therefore, could lead to the conclusion that it represented ordinary antics in an extraordinary situation.

Plaintiff's most effective evidence of a hostile work environment—given that the November 21, 1994 occurrence otherwise stands alone—are the alleged prior incidents of harassment, the same claims from previous years which, as indicated above, are time barred for purposes of liability. *See Ruffino v. State Street Bank and Trust Co.,* 908 F.Supp. 1019, 1039 (D.Mass.1995); *see also Perry v. Ethan Allen, Inc.,* 115 F.3d 143, 149 (2d Cir.1997) ("[O]ne of the critical inquiries in a hostile environment claim must be the environment. Evidence of a general work atmosphere—as well as evidence of specific hostility directed toward the plaintiff—is an important factor in evaluating the claim.") (quoting *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1415 (10th Cir.1987)). These occurrences, together with the incident itself, amount to nearly three years of averred harassment, as well as a claimant with a crushed disc. Although Ott contends that he neither grabbed nor lifted Plaintiff, a finding of unwelcomed sexual conduct may be warranted based on the historical facts as alleged. That finding alone, however, does not

---

**3.** BMC's argument that Plaintiff suffered no adverse employment consequences as a result of the alleged harassment is irrelevant to a hostile work environment claim. It is sufficient for Plaintiff to show a hostile atmosphere to prevail on such claim. *Meritor,* 477 U.S. at 65, 106 S.Ct. at 2404. No quid pro quo harassment need be demonstrated. *Id.* at 65–66, 106 S.Ct. at 2404–05.

necessarily enable Plaintiff to survive BMC's motion for summary judgment.

### 3.

■ Plaintiff can survive BMC's summary judgment motion only if she also proffers sufficient evidence that BMC knew or should have known of the harassment and took either no, or at least inappropriate, remedial action. *Meritor,* 477 U.S. at 72, 106 S.Ct. at 2407; *Morrison,* 108 F.3d at 437. Plaintiff's evidence in this regard is grievously thin.[4]

First, Plaintiff asserts that BMC had actual knowledge of ongoing sexual harassment because a female co-worker, Lakes–Afflito, previously reported to the department manager that Ott had repeatedly pulled her hair. However, Lakes–Afflito herself does not contend that the hair pulling was in any way sexual in nature. Moreover, Lakes–Afflito testified that the hair pulling stopped after she reported it to management. In stark contrast is BMC's undisputed evidence that it was unaware of Plaintiff's allegations of sexual harassment until receipt of her EEOC complaint, nearly a year after the November 21, 1994 incident, at which time BMC immediately initiated an investigation.

Second, Plaintiff argues that BMC had constructive knowledge of Ott's harassing behavior as a result of a September 1993 hospital-wide employee survey. That survey, Plaintiff claims, demonstrates a greater perception of harassment by employees in Ott's department than at BMC overall.[5] While perhaps indicative of a problem needing attention, the survey does not strengthen Plaintiff's claim that BMC knew that Plaintiff herself was sexually harassed, particularly in light of what was presumably her participation in creating the sexually charged atmosphere. Moreover, Plaintiff makes no connection between the survey and any individual harasser or specific act. Finally, the survey's connection to incidents over a year in the future is attenuated at best.

At bottom, because there is no evidence of BMC's knowledge of Ott's actions, even assuming those actions amounted to sexual harassment, BMC itself is entitled to summary judgment on Count I of Plaintiff's complaint.

### B. *Ott's motion for summary judgment*

■ Given that the Court is recommending summary judgment on the sole federal claim (Plaintiff's Title VII claim against BMC), grounds no longer exist for federal subject matter jurisdiction over Plaintiff's state law negligence claim against Ott. Of course, in the absence of such jurisdiction, the Court may still exercise supplemental jurisdiction over the state law claim. 28 U.S.C. § 1367(a). The exercise of that jurisdiction, however, is discretionary. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Generally speaking, a federal court will refuse to exercise pendent jurisdiction when the federal claims drop out "well before the commencement of trial". *Rodriguez v. Doral Mortgage Corp.,* 57 F.3d 1168, 1177 (1st Cir.1995). *See United Mine Workers,* 383 U.S. at 736, 86 S.Ct. at 1144 (even if the federal claims were substantial, if dismissed before trial, the state claims should be dismissed); *Martinez v. Colon,* 54 F.3d 980, 990 (1st Cir.1995) (dismissal of state claim appropriate when no "legitimate" federal question remained in advance of trial).

The exercise of supplemental jurisdiction would be particularly inappropriate here because the count against Ott raises questions

---

4. Although Ott was Plaintiff's supervisor in 1992 and 1993, the November 21, 1994 incident took place after Ott was removed from his supervisory capacity. While Plaintiff maintains that Ott retained supervisory control over Plaintiff, Ott's status as either a supervisor or co-worker is not dispositive of a hostile work environment claim such as this. *Morrison,* 108 F.3d at 437. Moreover, the First Circuit has explicitly declined in similar situations to impose a standard of strict liability for supervisor harassment. *Id. But see College–Town, Div. of Interco, Inc. v. Massachu-* *setts Comm'n Against Discrimination,* 400 Mass. 156, 508 N.E.2d 587, 593 (1987).

5. Plaintiff asserts that the survey demonstrates that 23% of the employees in the radiology department believed that their work place was not free from sexual harassment. In comparison, Plaintiff notes, the survey shows that the overall percentage of people at BMC who believed that the work place was not free from sexual harassment was only 10%.

arising at the intersection of state negligence law and the Massachusetts Worker's Compensation Act ("WCA"). *See* M.G.L. ch. 152, § 24.[6] Answers to those questions are best provided by the state courts.

 A court may relinquish jurisdiction after removal when there is no longer a basis for federal subject matter jurisdiction. *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 353, 108 S.Ct. 614, 620, 98 L.Ed.2d 720 (1988). *Cf. Menorah Ins. Co., Ltd. v. INX Reins. Corp.,* 72 F.3d 218, 224 (1st Cir. 1995). Thus, even though the initial removal to federal court was not opposed by Plaintiff, "subject matter jurisdiction cannot be conferred on federal courts by consent, and a federal court is obliged to remand a case *sua sponte* when it becomes apparent that subject matter jurisdiction is lacking." *Cuoco v. Nynex, Inc.,* 722 F.Supp. 884, 887 (D.Mass. 1989) (citing *People's Bank of Belville v. Calhoun,* 102 U.S. 256, 260–62, 26 L.Ed. 101 (1880)). *See also Crespo v. Candela Laser Corp.,* 780 F.Supp. 866, 875 (D.Mass.1992). Given the purely state law issues regarding Ott's purported negligence, state court adjudication best serves the interests of "economy, convenience, fairness and comity." *Cohill,* 484 U.S. at 353, 108 S.Ct. at 620.

## V. CONCLUSION

For the foregoing reasons, the Court recommends that BMC's motion for summary judgment on Count I be allowed and that Ott's summary judgment motion on Count II be denied without prejudice and that Count II be remanded to state court for further proceedings.[7]

October 23, 1997.

---

**6.** Ott contends that the count against him should be dismissed because the exclusive remedy for a negligence claim, either against an employer or a co-employee, is the WCA. *See Mulford v. Mangano,* 418 Mass. 407, 636 N.E.2d 272, 275 (1994); *see also Bergeson v. Franchi,* 783 F.Supp. 713, 716 (D.Mass.1992); *Anzalone v. Massachusetts Bay Transp. Auth.,* 403 Mass. 119, 526 N.E.2d 246, 249 (1988). Plaintiff, on the other hand, asserts that the WCA does not preclude a negligence suit against a co-employee if the tort arose from sexual harassment, which is clearly outside the course of employment. Plaintiff's somewhat anomalous claim of "negligent sexual harassment" clouds this issue, in that her claim against Ott really sounds in negligence only.

**7.** The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart v. Ford Motor Co.,* 616 F.2d 603, 604 (1st Cir.1980). *See also Thomas v. Arn,* 474 U.S. 140, 154–55, 106 S.Ct. 466, 474–75, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.