Sonia **DELGADO GRAULAU, Orlando Alvarez Rodriguez, and the Conjugal Partnership formed by them, Plaintiffs,**

v.

**PEGASUS COMMUNICATIONS OF PUERTO RICO, also known as Pegasus Cable Television Mayaguez, also known as MCT Cablevision Ltd Partnership; Pegasus Communications Corporation, Defendants.**

**No. CIV. 99–1836(JAF).**

United States District Court, D. Puerto Rico.

Jan. 24, 2001.

---

Carlos E. Bayron–Velez, Mayaguez, PR, for Sonia L. Delgado–Graulau, Orlando Alvarez–Rodriguez, Conjugal Partnership Alvarez–Delgado, plaintiffs.

Santiago Mari–Roca, Biaggi, Busquets & Mari Roca, Lissette Marin–Aponte, Mayaguez, PR, for Pegasus Communications of Puerto Rico aka Pegasus Cable Television Mayaguez aka MCT Cablevision Ltd. Partnership, defendants.

## OPINION AND ORDER

FUSTE, District Judge.

Plaintiffs, Sonia Delgado Graulau ("Delgado"), her husband Orlando Alvarez Rodríguez ("Alvarez"), and their conjugal partnership (collectively "Plaintiffs"), bring a sexual discrimination suit against Defendants, Pegasus Communications of Puerto Rico and Pegasus Communications Corporation ("Pegasus Communications"), pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e

(1988); 29 L.P.R.A. §§ 146–51, 185a–185k, 1321–41 (1995); and P.R. CONST. art. I, § 1. Plaintiffs seek compensatory and punitive damages.

Plaintiffs move for reconsideration of our August 24, 2000 Opinion and Order, which dismissed all but one of their Title VII claims. Defendants oppose Plaintiffs' motion for reconsideration and counter with a motion for summary judgment arguing that Plaintiffs have failed to establish a prima facie case for sexual discrimination under applicable federal and state law.

## I.

### Factual and Procedural Synopsis

Given the nature of the motions before us, we recite the pertinent factual and procedural background, elaborating when necessary.

In late 1989, Defendants hired Delgado and appointed her to be Customer Service Representative Supervisor. Delgado alleges that during her employment she excelled in her position and received repeated commendations. In August 1996, company officials purportedly notified Delgado that she was being considered for promotion to Office Manager. However, on September 26, 1996, two executives working for Defendants informed Delgado that another employee, Iván Caro, had been promoted to Office Manager and that she had been demoted to Batch Clerk.

That day and the next, Delgado protested her forgone promotion and unexpected demotion to Alan Burch, Defendants' Senior Vice–President for Cable Operations. She noted that she was more qualified than Caro because she had worked in cable operations for over ten years and had been Caro's supervisor. Burch allegedly responded that he had promoted Caro to Office Manager because Burch required an individual who could always be available and Delgado, as a married woman with children, had other responsibilities which

could conflict with her professional duties. Burch also allegedly admitted to not having considered Delgado's purportedly stellar performance evaluations when making his decisions regarding promotion and demotion.

On October 1, 1996, Delgado reported to her new work station. Although her new duties required her to continue to handle significant amounts of cash, her new, as compared to her old, work space lacked a safety lock box. Delgado allegedly complained to her superiors about the office's faulty cash management procedures, as well as her working conditions, which allegedly caused her significant anxiety and stress that aggravated her pre-existing ulcers.

On April 18, 1997, Defendants discharged Delgado from her position, citing her alleged poor job performance.

On January 8, 1998, Delgado filed a sexual discrimination charge against Defendants with the Anti–Discrimination Unit of Puerto Rico's Department of Labor and the Equal Employment Opportunity Commission ("EEOC"). Plaintiffs subsequently received Right–to–Sue Notices from both agencies and, thus, filed this complaint on July 27, 1999, alleging Title VII violations by Defendants.

On November 22, 1999, Defendants moved for summary judgment arguing that Plaintiffs' complaint is time-barred. They maintained that since Delgado's alleged demotion occurred on September 26, 1996, and her dismissal on April 18, 1997, she filed her January 8, 1998 sexual discrimination charge after the 180–day statutory deadline.

Plaintiffs disagreed. They argued that Defendants' personnel actions against Delgado constitute a serial violation. As such, Plaintiffs contended that the statute of limitations began running from the date of the last violation, which they propose is the April 18, 1997 dismissal. Additionally, Plaintiffs maintained that 42 U.S.C. § 2000e–5(e)(1) permits the filing of an EEOC complaint three-hundred days after the last alleged infraction, as long as a plaintiff has previously filed a discrimination charge with a state or local agency which is capable of providing relief. Plaintiffs concluded that they had until February 12, 1998 to file with the EEOC, and their January 8, 1998 complaint was, therefore, timely. Plaintiffs also asserted that even if Defendants were to prevail on their motion for summary judgment on the Title VII claims, the state law causes of action would still remain, preventing dismissal of the entire complaint.

On August 24, 2000, we granted Defendants' motion for summary judgment with regard to all but one of Plaintiffs' Title VII claims, i.e., the April 18, 1997 dismissal. To reach our holding, we found that several of Plaintiffs' assertions evinced a contemporaneous-to-the-acts belief by them that Defendants had discriminated against Delgado. We also found that Plaintiffs had not proffered sufficient evidence to link by similarity, repetition or continuity her demotion to her discharge so as to characterize the events as parts of a serial violation of Title VII. Finally, we did not address the standing of Plaintiffs' state law claims, since the parties had not briefed the issue.

On reconsideration, Plaintiffs dispute our finding that Delgado's September 26, 1996 demotion to Batch Clerk and her April 18, 1997 dismissal were not part of a serial violation of Title VII. Proffering new evidence which they maintain was not available to them at the time of Defendants' November 19, 1999 summary judgment motion, Plaintiffs contend that the Anti–Discrimination Unit of Puerto Rico's Department of Labor fully considered the arguments presented by Defendants in their November 19, 1999 summary judgment motion and held that Plaintiffs' Title VII claims are not time-barred. Consequently, Plaintiffs maintain that we should defer to the rulings of this agency.

Defendants oppose Plaintiffs' motion for reconsideration. First, Defendants proffer

Delgado's testimony which indicates, according to Defendants, her recognition at the time of the demotion that discriminatory animus may have motivated adverse personnel actions by her work supervisors. Defendants also aver that Plaintiffs' state law claims with regard to the 1996 demotion are time-barred pursuant to *Suárez Ruiz v. Figuera Colón*, 145 D.P.R. 9 (1998).

Additionally, Defendants move for summary judgment of Plaintiffs' claim regarding Delgado's April 18, 1997 discharge from employment. Defendants contend that Plaintiffs have failed to establish a prima facie case of sexual discrimination under Title VII or applicable state law. Alternatively, Defendants maintain that legitimate business reasons motivated their termination of Delgado from her employment.

Plaintiffs oppose Defendants' second motion for summary judgment, refuting each of Defendants' purported grounds for Delgado's termination from employment.

## II.

### *Summary Judgment Standard*

The standard for summary judgment is straightforward and well-established. A district court should grant a motion for summary judgment "if the pleadings, depositions, and answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see Lipsett v. Univ. of P.R.*, 864 F.2d 881, 894 (1st Cir.1988). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law," and "genuine" if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The burden of establishing the nonexistence of a genuine issue as to a material fact is on the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden has two components: (1) an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and (2) an ultimate burden of persuasion, which always remains on the moving party. *See id.* In other words, "[t]he party moving for summary judgment, bears the initial burden of demonstrating that there are no genuine issues of material fact for trial." *Hinchey v. NYNEX Corp.*, 144 F.3d 134, 140 (1st Cir.1998). This burden "may be discharged by showing that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. After such a showing, the "burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor." *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir.1997) (citing *Celotex*, 477 U.S. at 322–25, 106 S.Ct. 2548).

Although the ultimate burden of persuasion remains on the moving party and the court should draw all reasonable inferences in favor of the nonmoving party, the nonmoving party will not defeat a properly supported motion for summary judgment by merely underscoring the "existence of some alleged factual dispute between the parties"; the requirement is that there be a genuine issue of material fact. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505; *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993). In addition, "factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Under Rule 56(e) of the Federal Rules of Civil Procedure, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see also*

*Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Hence, summary judgment exists to "pierce the boilerplate of the pleadings," *Wynne v. Tufts Univ. Sch. of Med.,* 976 F.2d 791, 794 (1st Cir.1992), and to "determine whether a trial actually is necessary." *Vega–Rodriguez v. P.R. Tel. Co.,* 110 F.3d 174, 178 (1st Cir.1997).

## III.

### *Title VII's Statute of Limitations*

On reconsideration, Plaintiffs propose that we defer to the finding of Puerto Rico's Anti–Discrimination Unit which considered the statute-of-limitations issue and found that Plaintiffs' claims were not time-barred. Plaintiffs also reassert that Delgado's demotion and subsequent discharge constitute a serial violation of Title VII.

### A. *Serial Violation*

Plaintiffs contest our previous findings regarding Delgado's 1996 demotion. In their motion for reconsideration, Plaintiffs contend that Delgado did not know at the time of her demotion that Defendants may have discriminated against her because of her gender. Plaintiffs also largely reassert their claim, and proffer new evidence in support thereof, that the 1996 demotion and the 1997 discharge constitute a serial violation of Title VII.

█ To meet Title VII's statute of limitations, a plaintiff must either file an EEOC charge within 180 days from the alleged Title VII violation, or file a complaint alleging gender-based discrimination with an appropriate state or local agency and then file an EEOC charge within 300

days of the alleged Title VII infraction. *See* 42 U.S.C. § 2000e–5(e)(1) [1]; *Provencher v. CVS Pharmacy,* 145 F.3d 5, 13 (1st Cir.1998). However, the continuing violations doctrine provides an exception to the statute-of-limitations period if there has been a serial violation of Title VII. *See DeNovellis v. Shalala,* 124 F.3d 298, 307 (1st Cir.1997).

A serial violation is "composed of a number of discriminatory acts emanating from the same discriminatory animus, [with] each act constituting a separate wrong actionable under Title VII." *Jensen v. Frank,* 912 F.2d 517, 522 (1st Cir.1990). The purpose of the serial violation doctrine is to ensure that section 2000e's statute of limitations does not foreclose a plaintiff's claims "merely because the plaintiffs needed to see a pattern of repeated acts before they realized that the individual acts were discriminatory." *Thomas v. Eastman Kodak Co.,* 183 F.3d 38, 54 (1st Cir.1999). This purpose envisions an element of notice. *See id.* at 53–54 ("Whether a serial violation exists does depend in part . . . on notice . . . .") (citation omitted). A plaintiff's knowledge of an employment action against her does not suffice by itself to constitute notice. *See id.* at 54 (finding that barring a Title VII claim which allegedly arose from acts of which plaintiff had knowledge does not further the purpose of the serial violation exception). Rather, a court can find that a plaintiff has received notice if an earlier act had " 'the degree of permanence which should trigger an employee's awareness and duty to assert his or her right.' " *Sabree v. United Bhd. of Carpenters and Joiners, Local No. 33,* 921 F.2d 396, 402 (1st Cir.1990) (quoting *Berry*

---

1. Title VII provides, in relevant part, that:

 A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . ., except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon re-

 ceiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

 42 U.S.C. § 2000e–5(e)(1).

*v. Bd. of Supervisors of L.S.U.,* 715 F.2d 971, 981 (5th Cir.1983)). Under these circumstances, the plaintiff may not successfully assert that the earlier, untimely employment action is substantially related to the later, timely act and, thus, constitutes part of a continuing violation. *See id.*

In our August 24, 2000 Opinion and Order, we found that days after the adverse personnel action against her, Delgado received notice of the possible discriminatory animus motivating this decision. *See Docket Document No. 33.* In reaching our finding, we noted several assertions forwarded by Plaintiffs. Defendants allegedly had been considering Delgado and a male co-worker for the position of Office Manager. *See Docket Document .Nos. 1, 15, and 37.* The male co-worker eventually secured the promotion, and Delgado was demoted to Batch Clerk. *See id.* Delgado then approached her supervisor Alan Burch and challenged him to explain the personnel action. *See id.* Burch allegedly stated that he was surprised about her claim because, as a wife and mother, Delgado has substantial, non-work-related responsibilities which her male counterpart did not have. *See id.* Furthermore, Burch allegedly confirmed that he did not consider Delgado's work performance evaluations when making his personnel decisions. *See Docket Document Nos. 1 and 37.* Assuming argüendo these allegations to be true, we found that Delgado had adequate notice that Defendants may have discriminated against her because of her gender.

The record, as supplemented by the parties since the August 24, 2000 Opinion and Order, supports our previous findings. In her deposition, Delgado testified that she knew on September 26, 1996, that Burch, without considering performance evaluations, had promoted Iván Caro, a man who was Delgado's subordinate in the work place, to the position of Office Manager, and demoted Delgado to Batch Clerk. *See Docket Document No. 41.* Delgado also testified that Burch, in explaining the personnel actions, stated that Delgado's responsibilities as a mother and wife would hobble her performance as Office Manager. *See id.* Lastly, Delgado testified that in October 1996, the same month in which her demotion took effect, she considered filing a lawsuit over the demotion. *See id.*

■ Given Delgado's own testimony, we again find as a matter of law that Plaintiffs knew or should have known that discriminatory animus may have motivated Delgado's 1996 demotion, and, thus, Plaintiffs were obliged to assert their claims in a timely fashion or risk losing them.[2] *See Provencher,* 145 F.3d at 15; *Webb v. Cardiothoracic Surgery Assocs. of North Tex., P.A.,* 139 F.3d 532, 537–38 (5th Cir.1998); *Speer v. Rand McNally & Co.,* 123 F.3d 658, 663 (7th Cir.1997); *Sabree,* 921 F.2d at 402; *Rose v. Baystate Med. Ctr., Inc.,* 985 F.Supp. 211, 216 (D.Mass.1997).

**B. *Deference to State Agency Ruling***

Plaintiffs emphasize that the Anti–Discrimination Unit of Puerto Rico's Department of Labor considered whether Plaintiffs' claims were time-barred and found that they were not. Consequently, Plaintiffs maintain that we should "give great deference to the rulings of" this specialized agency and similarly find that Plaintiffs' claim with regard to Delgado's 1996 demotion is not time-barred.[3]

The First Circuit has found that "[i]t is now settled ... that State agency findings that are not reviewed by a state court are not entitled to any preclusive effect in a subsequent action under Title VII." *Thomas v. Contoocook Valley Sch. Dist.,* 150

---

**2.** Given our finding regarding Plaintiffs' revelatory notice, we need not reconsider whether the 1997 discharge, the timely act, is linked by similarity, repetition, or continuity to the 1996 demotion, the untimely act.

**3.** Plaintiffs submit no case law or other authority in support of their proposition that a federal court should defer to a state agency's judicially unreviewed findings. *See Docket Document No. 37.*

F.3d 31, 39 (1st Cir.1998) (citing *Univ. of Tenn. v. Elliott,* 478 U.S. 788, 795–96, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986)). "As the Supreme Court has observed, Congress could not have intended to accord preclusive effect to unreviewed administrative findings in a subsequent Title VII action because under the federal remedial scheme, even the [Equal Employment Opportunity Commission] is required to give only 'substantial weight' to state proceedings." *Id.* (citing *Kremer v. Chem. Constr. Corp.,* 456 U.S. 461, 470, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982)).

 Here, neither party has asserted that a state court reviewed the rulings of Puerto Rico's Anti–Discrimination Unit with regard to Plaintiffs' Title VII claims against Defendants. Accordingly, although we consider the entire record before us on a summary judgment motion, we do not grant any preclusive effect to the judicially unreviewed findings of the state's administrative agency.

## IV.

### *Title VII's Burden–Shifting Scheme*

Title VII provides that it is unlawful for an employer to discharge any individual or otherwise discriminate against him on the basis of his national origin.[4] A plaintiff can utilize direct evidence to demonstrate that defendants discriminated against her. *See Jackson v. Harvard Univ.,* 900 F.2d 464, 467 (1st Cir.1990) ("Direct evidence is evidence which, in and of itself, shows discriminatory animus."). Where there is no direct evidence or "smoking gun" demonstrating that the employer's bias against her employee's sex or national origin motivated her actions, the Supreme Court in

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), provides the legal framework with which to analyze the issue. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 505–07, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (applying the *McDonnell Douglas* formula to a Title VII discrimination claim); *Smith v. F.W. Morse & Co.,* 76 F.3d 413, 420 (1st Cir.1996) (stating that "[a]bsent the evidentiary equivalent of a 'smoking gun,' the plaintiff must attempt to prove her case by resort to a burden-shifting framework").

Here, neither party asserts that there is direct evidence or a "smoking gun" which demonstrates Defendants' alleged discriminatory animus against Delgado. Therefore, we consider the multi-factor test established by the Supreme Court in *McDonnell Douglas.*

 The *McDonnell Douglas* framework requires that a plaintiff establish a prima facie case by demonstrating that she: (1) was within a protected class; (2) met the employer's legitimate performance expectations; (3) was actually or constructively discharged; and (4) was replaced by another individual with similar skills and qualifications. *See DeNovellis v. Shalala,* 124 F.3d 298, 307 (1st Cir.1997); *Vega v. Kodak Caribbean, Ltd.,* 3 F.3d 476, 478 (1st Cir.1993); *Mesnick v. Gen. Elec. Co.,* 950 F.2d 816, 823 (1st Cir.1991). Once the plaintiff establishes a prima facie case, there is a presumption that the employer unlawfully discriminated against her. *See Vega,* 3 F.3d at 478; *Hebert v. Mohawk Rubber Co.,* 872 F.2d 1104, 1110–11 (1st Cir.1989).

---

**4.** Title VII of the Civil Rights Act of 1964 provides, in relevant part:

It shall be an unlawful employment practice for an employer -

A. [t]o discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex, or national origin; or

B. to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's ... sex, or national origin.

42 U.S.C. § 2000e-2(a) (1988).

The burden of production then shifts to the employer-defendant who must rebut the inference of discrimination by articulating some legitimate, non-discriminatory reason for the adverse employment action. *See id.* If the employer meets this burden, the inference of unlawful discrimination is erased, and the burden shifts to the plaintiff to show that the employer's alleged justification is a mere pretext for discrimination. *See Vega,* 3 F.3d at 479; *Mesnick,* 950 F.2d at 823. At this stage, the plaintiff must produce evidence beyond the mere assertion that the alleged justification is implausible and show that the employer's discriminatory animus actually motivated the adverse employment action. *See Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993); *Vega,* 3 F.3d at 479; *Mesnick,* 950 F.2d at 825. Throughout this analysis, the plaintiff maintains the burden of proving that she would not have suffered the adverse employment action but for her membership in a protected class. *See Freeman v. Package Mach. Co.,* 865 F.2d 1331, 1335 (1st Cir.1988). Thus, federal law "does not stop a company from discharging an employee for any reason (fair or unfair) or for no reason, so long as the decision to fire does not stem from the person's [national origin or sex]." *Id.* at 1341.

### A. *Prima Facie Case*

Defendants contend that Plaintiffs have not demonstrated that Delgado performed her duties as Batch Clerk to her employer's satisfaction or that Defendants replaced her with a comparably qualified individual. Thus, Defendants assert that Plaintiffs have failed to establish a prima facie case of sexual discrimination under Title VII or applicable state law.

■ Defendants do not specifically proffer evidence in support of their contentions regarding Plaintiffs' prima facie case. *See Docket Document No. 42.* However, the record contains proffered evidence of Delgado's satisfactory work performance at Pegasus Communications. On November 1, 1996, Delgado received a near perfect overall rating as Batch Clerk on her Employee Performance Evaluation. *See Docket Document No. 37, Ex. I.* Additionally, in a sworn written statement dated March 26, 1998, Jeronimo Fagundo Vélez, Business Manager for Defendants until February 12, 1998, averred that as Delgado's supervisor in the handling of petty cash, he found her to be extremely conscientious in the performance of her duties. *See id.* Fagundo also asseverated that Delgado maintained accurate records of the petty cash box's contents and always accounted for same. Given this evidence, we find that a reasonable fact-finder could conclude that Plaintiffs have demonstrated that Delgado adequately met her employer's expectations regarding her work performance. *Cf. St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (stating that in order for a plaintiff to establish a prima facie case under Title VII, the plaintiff need only produce admissible evidence which, if uncontradicted, would justify a legal conclusion of discrimination).

With regard to the fourth prong of Plaintiffs' prima facie case, Plaintiffs can meet their burden if they show that Defendants sought someone to fulfill Delgado's duties as Batch Clerk after her termination. *See Lipsett,* 864 F.2d at 899. In other words, Plaintiffs must demonstrate that "the employer had a continued need for 'someone to perform the same work'" as the dismissed employee. *See Cumpiano v. Banco Santander P.R.,* 902 F.2d 148, 154 (1st Cir.1990) (quoting *Lipsett,* 864 F.2d at 899). However, Plaintiffs need not establish that Delgado was replaced by a man. *See id.; see also Perry v. Woodward,* 199 F.3d 1126, 1139 (10th Cir.1999); *Pivirotto v. Innovative Sys., Inc.,* 191 F.3d 344, 353–55 (3d Cir.1999) (collecting cases).

Here, the record indicates that Delgado's responsibilities as Batch Clerk included handling petty cash. *See Docket Document Nos. 37, Ex. I and 42, Ex. I.* After Defendants dismissed Delgado, they trans-

ferred these duties to Iván Caro. *See Docket Document No. 37, Ex. II.* The record also contains an organizational personnel chart for Pegasus Communications which lists someone other than Delgado as Batch Clerk. *See id.* Although the chart does not confirm with certainty whether someone replaced Delgado as Batch Clerk,[5] the record does support the reasonable conclusion that Defendants required that another individual perform at least some of Delgado's duties as Batch Clerk after her departure. Hence, we find that there is a genuine issue of material fact as to whether Plaintiffs satisfied the final prong of their prima facie case.

### B. *Non–Discriminatory Reason for the Adverse Employment*

The burden of production now shifts to Defendants. They must assert legitimate business reasons for discharging Delgado from her employment. Defendants maintain that they terminated Delgado because she allegedly failed: (1) to follow up on delinquent accounts in a proper and timely fashion; (2) to secure the petty cash box as per prevailing company policy; and (3) to demonstrate interest and cooperation with her colleagues and supervisors since her 1996 demotion, hindering her training and resulting in her refusal to work Saturdays as per company policy.

In support of their position, Defendants proffer a description of Delgado's job as Batch Clerk; undated testimony from unnamed sources regarding Delgado's alleged failure to secure the petty cash box properly; an internal memorandum from Maria Teresa Frontera, Delgado's supervisor at Pegasus Communications since approximately February 1997, to Ricardo Ferrer, System Manager, regarding Delgado's alleged hostility toward her work supervisors and her alleged failure to follow performance protocols; more unidenti-

fied testimony apparently by Delgado, regarding Delgado's work performance at Pegasus Communications; and the April 18, 1997 letter notifying Delgado of her dismissal. *See Docket Document No. 42, Exs. I–V.*

Taking Defendants' proffered evidence as true for the purposes of conducting the second stage of the burden-shifting framework under Title VII, we find that Defendants have produced sufficient competent evidence to rebut the presumption of intentional discrimination which Plaintiffs' prima facie case generated. *See Byrd v. Ronayne,* 61 F.3d 1026, 1031 (1st Cir.1995) (finding employer's proffers of employee's failure to perform adequately sufficed to displace prima facie presumption in Title VII sexual discrimination case); *see also St. Mary's Honor Ctr.,* 509 U.S. at 508, 113 S.Ct. 2742 ("By producing evidence (whether ultimately persuasive or not) of nondiscriminatory reasons, petitioners sustained their burden of production."). Hence, Plaintiffs must "present sufficient evidence to show both that the employer's articulated reason[s] ... [are] a pretext and that the true reason is discriminatory." *Eastman Kodak Co.,* 183 F.3d at 56. "Conclusory allegations, improbable inferences, and unsupported speculation" will not defeat a motion for summary judgment. *See Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir. 1990).

### C. *Pretext*

Plaintiffs can establish that Defendants' stated reasons for Delgado's dismissal are a pretext for discrimination in several ways. *See Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 55 (1st Cir.2000).

---

**5.** Although not dated, the chart lists Iván Caro as a supervisor and Frances Nazario as Batch Clerk. It does not mention Delgado at all. Since Iván Caro assumed the supervisory position on or about September 26, 1996, and

Delgado worked as Batch Clerk from that date until April 18, 1997, we assume that the chart outlines Pegasus Communications' organizational structure for some date after April 18, 1997.

### 1. *Discriminatory Comments*

A plaintiff can show that a decision-maker made discriminatory comments. *See id.* For these comments to constitute evidence of discrimination, rather than stray remarks, they must be: " '1) related [to the protected class of persons of which the plaintiff is a member]; 2) proximate in time to the terminations; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.' " *Krystek v. Univ. of S. Miss.*, 164 F.3d 251, 256 (5th Cir.1999) (quoting *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir.1996)).

■ Plaintiffs allege that Alan Burch, the Senior Vice–President for Cable Operations at Pegasus Communications, intimated to Delgado on or about September 27, 1996, that he had offered the position of Office Manager to Iván Caro because Caro was not a married woman with child-raising responsibilities. While these comments relate to Delgado's protected status as a woman and were made by a decision-maker within Pegasus Communications, they, nevertheless, do not constitute evidence of discrimination but, rather, are stray remarks, for two reasons.

First, Burch did not make the alleged comments contemporaneously to Delgado's April 18, 1997 discharge. *See Santiago–Ramos*, 217 F.3d at 55 (finding two weeks between alleged discriminatory comments and discharge to be timely); *cf. Price v. Marathon Cheese Corp.*, 119 F.3d 330, 337 (5th Cir.1997) (holding that alleged discriminatory remark made two years before discharge did not evidence intentional age discrimination); *Ridge v. Cape Elizabeth Sch. Dept.*, 77 F.Supp.2d 149, 165–66 (D.Me.1999) (same). Rather, Burch allegedly made the remarks in September 1996, approximately eight months before the discharge. *See Sonia Delgado's September 27, 2000 Deposition Transcript, Docket Document No. 49*. Thus, we find that the eight-month interval between Burch's alleged remarks and Delgado's termination is too long for the comments to constitute evidence of discriminatory animus motivating the dismissal.

Second, Burch's alleged remarks were not related to Delgado's 1997 termination that is at issue, but rather her 1996 demotion. *Cf. Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 434 (5th Cir.1995) (concluding that alleged discriminatory behavior lacked sufficient nexus to later adverse personnel action to constitute animus). Thus, we accord Burch's alleged remarks little probative weight. *See McMillan v. Mass. Soc'y for the Prevention of Cruelty to Animals*, 140 F.3d 288, 300–01 (1st Cir. 1998) (stating that "even if [stray] remarks are relevant for the pretext inquiry, their probativeness is circumscribed if they were made in a situation temporally remote from the date of the employment decision, or if they were not related to the employment decision in question . . .") (internal citations omitted).

Moreover, Plaintiffs do not allege that others at Pegasus Communications have made discriminatory remarks. In fact, Delgado herself has admitted that individuals who supervised her work as Batch Clerk did not discriminate against her. *See Sonia Delgado's August 8, 2000 Deposition Transcript, Docket Document No. 49*. Moreover, when asked during her deposition to recount the discriminatory acts to which Defendants subjected her, Delgado twice mentioned only the forgone promotion and demotion of 1996. *See Docket Document No. 26, Ex. I*. Hence, Plaintiffs have not submitted evidence of a general atmosphere at Pegasus Communications that, although not probative, " 'may be considered along with any other evidence bearing on motive in deciding whether a Title VII plaintiff has met her burden of showing that . . . [Defendants'] reasons are pretext.' " *Santiago–Ramos*, 217 F.3d at 55 (quoting *Sweeney v. Bd. of Trs. of Keene State Coll.*, 604 F.2d 106, 113 (1st Cir.1979)).

### 2. *Weaknesses, Implausibilities, or Contradictions*

A plaintiff can establish pretext by demonstrating " 'weaknesses, implausibilities,

inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons' such that a factfinder could 'infer that the employer did not act for the asserted non-discriminatory reasons.'" *Id.* at 56 (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 168 (1st Cir. 1998)). Plaintiffs contend that the record does not support three of Defendants' proffered reasons for Delgado's discharge.

First, Plaintiffs maintain that, contrary to Defendants' assertions, Delgado did not violate company policy with regard to safeguarding the petty cash box. Plaintiffs assert that securing the petty cash box in the Business Manager's office at the close of business each day was not part of Delgado's responsibilities, and that Defendants have not proffered evidence to refute this contention.

Our review of the record reveals that Defendants did not have a written policy regarding the safeguarding of the petty cash box after business hours. *See Affidavit by Jerónimo Fagundo Vélez, Docket Document No. 37, Ex. II.* However, according to Jerónimo Fagundo, Defendants did have a verbal understanding with their employees that at the end of each day, the petty cash box was to be secured in one of the vaults located within the executive offices. *See id.; see also Sonia Delgado's September 27, 2000 Deposition Transcript, Docket Document No. 49* (testifying that she knew that she "was supposed to put [the petty cash box] in a safe" at the end of the business day).

Second, Plaintiffs refute Defendants' assertion that Delgado, after having discovered the following morning that the petty cash box was missing from underneath her desk, did not inform her supervisors about its absence or otherwise seek to address the apparently lost box. Plaintiffs contend that Delgado notified Jerónimo Fagundo, her immediate supervisor with regard to the petty cash box, about the box's disappearance.

The record indicates that Delgado testified in her deposition that she informed Fagundo, her supervisor for cash management procedures, that someone may have taken the petty cash box from underneath her desk. *See Sonia Delgado's August 8, 2000 Deposition Transcript, Docket Document No. 49.* Yet, Alan Burch testified that he believed that Jerónimo Fagundo and María Frontera decided to terminate Delgado partially because she had failed to report the missing petty cash box to her supervisors. *See Alan Burch's August 2; 2000 Deposition Transcript, Docket Document No. 49.*

Finally, Plaintiffs assert that Delgado was not responsible for conducting "follow up" with clients when their checks for payment could not be redeemed for insufficient funds, as Defendants contend. Moreover, Plaintiffs maintain that Defendants are barred from proposing that irregularities in Delgado's handling of returned checks justified her discharge because Defendants have failed to comply with Plaintiffs' discovery requests on this matter.

We find that when Delgado received a returned check from a client, her tasks, as defined in her September 30, 1996 job description, included:

a—Charg[ing] the correspondent amount to the accounts and send[ing] notifications[;]

b Issu[ing] Disconnect orders to those that have not issued their payments[; and]

c Report[ing] these account [sic] to the Collection Agency, for recovery.

*Docket Document No. 49, Ex. I; see also Sonia Delgado's September 27, 2000 Deposition Transcript, Docket Document No. 49.* As part of the notification process, Delgado was responsible for placing a note in the client's file, which documented the steps she had taken pursuant to company policy, and notifying the Business Manager, through a memorandum or otherwise, which informed the Business Manager of the same. *See Alan Burch's August 2, 2000 Deposition Transcript, Docket Docu-*

*ment No. 49; Sonia Delgado's August 8, 2000 Deposition Transcript, Docket Document No. 49; Sonia Delgado's September 27, 2000 Deposition Transcript, Docket Document No. 49.*

There is contradictory testimony in the record, however, on what steps, if any, Delgado took with regard to the several returned checks allegedly found in her desk drawer, particularly with regard to the Holiday Inn account. *See Alan Burch's August 2, 2000 Deposition Transcript, Docket Document No. 49* (stating that Defendants have no record of Delgado having executed her duties fully with regard to these returned checks); *Sonia Delgado's September 27, 2000 Deposition Transcript, Docket Document No. 49* (testifying that she sent a letter to the Holiday Inn regarding their returned check and discussed appropriate measures with Fagundo).

Thus, we find that there are genuine disputes as to: (1) whether Defendants had a policy regarding the safe-keeping of petty cash boxes after business hours; (2) if so, whether Delgado violated this policy; (3) whether Delgado followed established procedures for reporting missing petty cash boxes; and (4) whether Delgado correctly followed company policy regarding the bounced checks that were found in her desk drawer.

### 3. *Post Hoc Justifications*

Plaintiffs can establish pretext by demonstrating that Defendants' non-discriminatory reasons for Delgado's discharge were after-the-fact justifications, provided subsequent to the commencement of the legal action. *See Santiago–Ramos,* 217 F.3d at 56 (citation omitted). Plaintiff submits that Defendants asserted for the first time in their October 30, 2000 motion for summary judgment that Delgado's alleged hostile and uncooperative attitude toward her co-workers was a reason for her discharge.

In Delgado's discharge letter, dated April 18, 1997, Defendants' Operation Manager, Maria Frontera, makes no mention of alleged behavioral problems with Delgado. *See Docket Document No. 42, Ex. V.* The letter only cites "job performance" as the reason for Delgado's termination. *See id.* Furthermore, Delgado testified that in the meeting in which Burch, Frontera, and another individual handed her the discharge letter, Burch only cited her alleged mishandling of the petty cash box and the returned checks as the reasons for her dismissal. *See Sonia Delgado's September 27, 2000 Deposition Transcript, Docket Document No. 49.* However, Burch testified that he did not discuss with Delgado the reasons for her dismissal at the time of its occurrence, nor did he participate in any meeting in which this was discussed. *See Alan Burch's August 2, 2000 Deposition Transcript, Docket Document No. 49.* Nevertheless, Frontera's memorandum which documents Delgado's alleged hostile attitude toward her supervisors is dated February 2, 1998, over nine months after Delgado's termination. By this time, Delgado was no longer working for Defendants, and sexual discrimination charges were pending before the Anti–Discrimination Unit and the EEOC.

We find that a jury could rely upon Delgado's statements and the timing of Frontera's memorandum to conclude that one of Defendants' stated reasons for Delgado's termination, i.e., her alleged failure to cooperate with her supervisors and co-workers, was merely a pretextual post-hoc justification. *See Santiago–Ramos,* 217 F.3d at 56 (finding genuine issue of material fact regarding employer's justification for employee's firing when employee testified that employer had not provided justification contemporaneously to firing and memorandum identifying justification was dated several weeks after discharge).

### D. *Discriminatory Animus*

In addition to establishing that Defendants' proffered reason for the employment discharge was pretext, Plaintiffs

must also show that discriminatory animus motivated Defendants' action. *See Santiago–Ramos,* 217 F.3d at 54, 57. "Plaintiffs may use the same evidence to support both conclusions, provided that the evidence is adequate to enable a rational factfinder reasonably to infer that unlawful discrimination was a determinative factor in the adverse employment action." *Eastman Kodak Co.,* 183 F.3d at 57 (citation omitted).

Plaintiffs contend that several incidents establish Defendants' discriminatory motivation: (1) Burch's alleged remarks to Delgado on September 26 and 27, 1996; (2) Delgado's transfer to an "open and unsafe" work space for handling cash transactions; and (3) the failure of Maria T. Frontera, an Operations Manager, to solicit Delgado's input before issuing new procedures for cash balancing. *See Docket Document No. 49.* We find the collective weight of the proffered evidence which contests Defendants' purported reasons for Delgado's termination sufficient to meet the discriminatory animus requirement.

■ Consequently, we find that a reasonable jury could find that Defendants' reasons for discharging Delgado were pretext, rather than legitimate business reasons. In reaching our judgment, we are cognizant of the principle that courts should exercise extreme caution before granting summary judgment for employers on issues such as intent, motive, and pretext. *See Hodgens,* 144 F.3d at 167 ("[W]here a plaintiff . . . makes out a prima facie case and the issue becomes whether the employer's . . . reason is a pretext for discrimination, courts must be particularly cautious about granting . . . summary judgment.") (internal quotations omitted).

## V.

### State Law Claims

Defendants contend that Plaintiffs' claims under Puerto Rico's Law 100, or anti-discrimination statute, 29 L.P.R.A. §§ 146–151 (1995), are time-barred with regard to the 1996 demotion because Plaintiffs did not file their claims within the one-year statute of limitations.

■ Although Puerto Rico's anti-discrimination statute does not include a limitations provision, *see id.,* courts have applied a one-year period to cases arising under Law 100. *See Landrau–Romero v. Banco Popular De P.R.,* 212 F.3d 607, 615 (1st Cir.2000) ("Law 100 . . . has a statute of limitations of one year.") (citing *Iglesias v. Mut. Life Ins. Co. of N.Y.,* 156 F.3d 237, 240 (1st Cir.1998)); *Am. Airlines, Inc. v. Cardoza–Rodriguez,* 133 F.3d 111, 124 (1st Cir.1998) ("In *Olmo v. Young & Rubicam of P.R., Inc.,* 110 P.R. Dec. 740 (P.R.1981), the Supreme Court of Puerto Rico held that the one year statute of limitations in Article 1868 of the Puerto Rico Civil Code applied to Law 100 claims."); *Matos Ortiz v. Commonwealth of P.R.,* 103 F.Supp.2d 59, 63–64 (D.P.R.2000); *Ramos v. Roche Prods., Inc.,* 694 F.Supp. 1018, 1027 (D.P.R.1988), *rev'd on other grounds, Rossy v. Roche Prods., Inc.,* 880 F.2d 621 (1st Cir.1989). A cause of action under Law 100 accrues on the date that the employee becomes aware of the adverse personnel action either through notification by the employer, *see Cardoza–Rodriguez,* 133 F.3d at 124–25, or the effectuation of the decision. *See Landrau–Romero,* 212 F.3d at 615 (finding that claim pursuant to Law 100 accrued on the date that another employee occupied position sought by plaintiff).

■ Here, Defendants notified Delgado of her demotion on September 26, 1996, and she began work as a Batch Clerk, her new position, on October 1, 1996. Plaintiff Delgado did not file a claim with the Anti–Discrimination Unit of the Puerto Rico Department of Labor until January 8, 1998, and Plaintiffs did not file the present suit against Defendants until July 27, 1999. Consequently, Article 1868 of Puerto Rico's Civil Code bars Plaintiffs claims

under Law 100 against Defendants for the 1996 demotion.

Plaintiffs, however, argue that an extrajudicial claim tolled the running of the statute of limitations. Specifically, Plaintiffs maintain that the filing of Delgado's claim before the Anti–Discrimination Unit of the Puerto Rico Department of Labor constitutes an extrajudicial claim, as recognized by local law, which tolled the running of the statute of limitations from the date of its filing until the administrative agency rendered a final decision. Accordingly, Plaintiffs conclude that Delgado's claim tolled the running of the statute of limitations from January 8, 1998, the date on which the claim was filed, until March 25, 1999, the date on which the Anti–Discrimination Unit issued its decision. Finally, Plaintiffs contend that a new one-year-long limitations period began running on March 25, 1999, making the filing of their present complaint on July 27, 1999, timely.

■ Article 1873 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5303 (1991), governs the interruption of the running of Law 100's one-year statute of limitations. *See Tokyo Marine,* 142 F.3d at 4. Section 5303 provides that the "[p]rescription of actions is interrupted by their institution before the courts, by extrajudicial claim of the creditor, and by any act of acknowledgment of the debt by the debtor." 31 L.P.R.A. § 5303. The plaintiff carries the burden of proving that the prescriptive period has been interrupted. *See Tokyo Marine,* 142 F.3d at 4 (citations omitted). Once the plaintiff has carried this burden successfully, the full prescriptive period of one year begins to run anew. *See id.* (citations omitted).

The filing of a claim with the Anti–Discrimination Unit of the Puerto Rico Department of Labor constitutes an extrajudicial claim. *See Leon–Nogueras v. Univ. of P.R.,* 964 F.Supp. 585, 587–88 (D.P.R.1997); *Suarez v. Bankers Club of P.R.,* Civ. No. 90–659, 1997 WL 279860, at *2 (P.R. May 12, 1997); *cf. Matos Ortiz v. Commonwealth of P.R.,* 103 F.Supp.2d 59, 63 (D.P.R.2000) (analogizing tolling by Equal Employment Opportunity Commission charge of Laws 17 and 69 of the Puerto Rico Civil Code to interruption by Anti–Discrimination Unit charge of Law 100). Once the plaintiff has filed the claim and notified the employer-defendant of its filing, the one-year prescriptive period is suspended throughout the duration of the administrative proceedings and until the employer-defendant is notified of the agency's decision. *See* 29 L.P.R.A. § 150 (1995)[6]; *Leon–Nogueras,* 964 F.Supp. at 588.

■ Here, Delgado filed a claim with the Anti–Discrimination Unit on January 9, 1998. Although Plaintiffs do not indicate the date on which Defendants were notified of Delgado's 1998 filing, our review of the record reveals that Defendants received notice on or about January 9, 1998. *See Docket Document No. 37, Ex. II.* Hence, the prescriptive period for Plaintiffs' Law 100 claims was tolled until the Anti–Discrimination Unit notified Defendants of its decision on March 25, 1999. *See id.* A new one-year period began to run as of that date, extending Plaintiffs' time to file a judicial complaint until March 2000. *See* 31 L.P.R.A. § 5304 (1991) ("Interruption of prescription of actions in joint obligations equally benefits or injures all the creditors or debtors."); *Gonzalez Rodriguez v. Wal Mart, Inc.,* 1998 WL

---

**6.** Section 150 provides, in relevant part:

When a complaint for discrimination is filed at the Department of Labor and Human Resources, the one year statute of limitations to file for judicial action shall be interrupted upon notice of the complaint to the employer or defendant, provided the notice is served within said time limitation.

Furthermore, said statute of limitations shall remain suspended or frozen while the complaint is being processed at the Department of Labor and Human Resources and the defendant has not been notified of the decision of the Secretary of that Department, concerning the claim.

29 L.P.R.A. § 150.

876530, at *4 (P.R. Dec.9, 1998). Thus, Plaintiffs' complaint, filed on July 27, 1999, is timely.

## VI.

### *Conclusion*

In accordance with the foregoing, we **DENY** Plaintiffs' motion for reconsideration, *Docket Document No. 37*, and **DENY** Defendants' motion for summary judgment, *Docket Document No. 42*.

**IT IS SO ORDERED.**